COMMERCIAL STANDARD INSURANCE COMPANY, Berry Contracting, Inc., Eugene J. Adams and J. W. Rosson, Appellants,

v.

AMERICAN GENERAL INSURANCE COMPANY, Appellee.

No. 439.

Court of Civil Appeals of Texas.

Corpus Christi.

June 19, 1969.

Rehearing Denied Sept. 4, 1969.

**348**

Lewright, Dyer & Redford, J. M. Burnett, Corpus Christi, for appellants.

Branscomb, Gary, Thomasson & Hall, Richard A. Hall, Corpus Christi, for appellee.

## OPINION

NYE, Justice.

This declaratory judgment suit involves for all practical purposes, a controversy between two insurance companies. It concerns the legal significance of additional insureds under the omnibus clause, the employee exclusions clause, severability of interest clause, and the definition of the words "use" and "unloading", all of which are contained in an automobile policy issued by American General Insurance Company. The trial court granted American's motion for summary judgment on an agreed statement of facts.

American had issued a policy of insurance to Harris Concrete Company. The Concrete Company had been engaged by George Fuller Company, the general contractor, to deliver ready-mixed concrete to the Petroleum Tower Annex Building. The general contractor ordered the concrete to be delivered to the jobsite in revolving drum type concrete trucks and had secured the services of a crane owned by Berry Contracting, Inc. for use to transport the concrete from the truck over a sidewalk fence and down into the basement of the building to the forms. The crane was operated by Eugene J. Adams and J. W. Rosson, employees of the crane owner. In the operation the concrete was poured from the truck into a bucket which was attached to cables on the crane. The crane lifted the bucket over the sidewalk fence down into the basement and directly over the forms, where three employees of the general contractor, Cain, Castillo and Saenz, received and discharged the concrete. The accident occurred after three or four of such deliveries.

On the occasion in question, the bucket was filled with concrete from the concrete truck by an employee of the general contractor using a control level on the side of

the truck. After the bucket had been filled, it was lifted into the air by Adams and Rosson, the crane owner's employees. They were receiving instructions and signals on where the bucket was to be deposited by another employee of the general contractor. This employee signaled the crane operators to direct the movement of the bucket from the concrete truck over the fence to the forms. While Cain, Castillo and Saenz were positioning the bucket in the basement for release of the concrete, the turnbuckles on the cable supporting the jib extension became unscrewed to a point where the threads became stripped, allowing the jib to fall, dropping the concrete bucket on Cain, Castillo and Saenz and injuring them.

Commercial Standard Insurance Company's policy covered only the owner of the crane under the doctrine of respondeat superior. It did not cover Adams or Rosson, their employees individually. Following the injury of the three employees of the general contractor, Commercial Standard effected settlement with each. It then sought recovery of the amounts of the various settlements together with attorney fees and expenses from American. American contended at the outset that the owner and the employee operators of the crane were not insureds under American's policy, because they were not "using" (unloading) the concrete truck.

The policy issued by American to the owners of the concrete truck contained these provisions:

"III. Definition of Insured. * * * the unqualified word 'insured' includes the named insured and, if the named insured is an individual, his spouse if a resident of the same household, and also includes *any person while using* the automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or such spouse or with the permission of either * * *." (emphasis supplied)

Whether a person is insured under this definition depends on whether he was "using" the automobile. The policy provides in paragraph IV(e) that:

"(3). Use of the automobile for the purposes stated includes the loading and *unloading* thereof." (emphasis supplied)

If the truck was not being unloaded at the time of the accident there would be no coverage afforded the crane owner and its employee operators in any event. Appellee American, in a counterpoint, contends that by virtue of the purchase agreement entered into between the supplier of the concrete and the general contractor, there is no coverage with reference to the delivery of the concrete at the jobsite. American directs our attention to the fact that the owner of the concrete truck was to "furnish and deliver, f. o. b. jobsite, transit, mixed concrete." Appellant therefore contends that once the concrete had arrived at the jobsite, the owner of the concrete truck who furnished the concrete, had nothing further to do with it.

The Texas Supreme Court had an almost identical case before it in Travelers Insurance Co. v. Employers Casualty Co., 380 S.W.2d 610 (1964). The Court in Travelers recognized that the courts of other jurisdictions were not in agreement as to what is covered by the "loading and unloading" clause of an automobile liability policy. They referred to the minority rule that when the object reaches a place of rest and is no longer being carried or lifted off the vehicle, the transported object is referred to as "coming to rest" and the unloading operation ends. After considering a number of cases the Court finally adopted a broader construction denominated as the majority rule. This is where the unloading embraces not only the immediate transference of the goods to or from the vehicle, but the " 'complete operation' of transporting the goods between the vehicle and the place from or to which they are being delivered." The Court, in adopting the

"completed operation rule" and applying it to the unloading of concrete, held that the employment of the crane and the placing of the concrete in the bucket was just as essential a part of the complete operation of unloading, as was the discharge of the concrete from the truck into the bucket.

■ Appellee attempts to distinguish this case because in Travelers there was no evidence as to the contractual agreement between the parties with respect to the delivery or unloading of the ready-mixed concrete truck. Appellee argues that it is immaterial whether you follow the "completed operation" theory or the "coming to rest" doctrine because the concrete was completely delivered when placed in the bucket at the jobsite and there was no causal connection between the unloading by the truck operator and the accident, citing: United States Fidelity & Guaranty Co. v. Backus, 243 Md. 121, 220 A.2d 139 (1966); Bituminous Casualty Corporation v. Horn Lumber Company, 283 F.Supp. 365 (D.C. Ark.1968); Horn Lumber Company v. Travelers Indemnity Company, 283 F.Supp. 373 (D.C.Ark.1968). We reject these contentions and arguments. The Supreme Court after reviewing a number of cases said in Travelers:

"* * * The issue here is not who owned or controlled the concrete but whether Borders (the crane operator) was unloading the truck, and thereby using it, while the bucket full of concrete was being moved from the truck to the contractor's forms. * * *"

The Court said that if the concrete truck owner had rented or borrowed the crane and the bucket, and its employees were using the same to unload the truck, the automobile liability policy would clearly protect the concrete truck owner and its employees against liability arising out of the accident involved. The Court then holds that Borders, the crane owner, was an additional insured. It reasoned that:

"* * * 'delivery' as used by the courts refers not to the legal transfer of title, control, or risk of loss but to the physical placing of the articles at the point where the unloading process may, under the facts of the particular case, be regarded as complete. * * *"

We hold that since the injuries of the three employees of the general contractor arose out of the use (unloading) of the Harris vehicle, the crane owner (Berry) and his employees (Adams and Rosson) were insureds under American's policy.

It was stipulated that if the injuries in question arose during the loading or unloading of the concrete truck, then the general contractor was also an insured (omnibus) under American's policy. It was further stipulated that the general contractor carried workmen's compensation insurance, from which his three injured employees received benefits. Appellants state that the question involved is whether the "employee exclusion clause" contained in the concrete truck owner's automobile liability policy, excludes coverage only when an injured employee asserts a claim against its own employer. Appellants specifically raise the question that since they are insureds, (because of the fact that they were engaged in the unloading of the concrete from the truck which belonged to the named insured) are they to be robbed of coverage merely because the claims for damages asserted against them were made by persons who happened to be employees of another (additional) insured, when no claims for damages were made by them against their own employer and such employer does not find it necessary to claim and does not claim, coverage for itself under American's policy?

Additional provisions of the policy insofar as they are relevant to the decision involved in this case are as follows:

"Coverage A—Bodily Injury Liability. To pay on behalf of the insured all sums which the insured shall become legally

obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person, caused by accident and arising out of the ownership, maintenance or use of the automobile."

\*   \*   \*   \*   \*   \*

"This policy does not apply:

\*   \*   \*   \*   \*   \*

(d) under coverage A, to bodily injury to or sickness, disease or death of any employee of the insured arising out of and in the course of (1) domestic employment by the insured, if benefits therefor are in whole or in part either payable or required to be provided under any workmen's compensation law, or (2) other employment by the insured;

(e) under coverage A, to any obligation for which the insured or any carrier as his insurer may be held liable under any workmen's compensation, unemployment compensation or disability benefits law, or under any similar law; \*   \*   \*"

\*   \*   \*   \*   \*   \*

"6. Severability of Interests—Coverages A and B. The term 'the insured' is used severally and not collectively, but the inclusion herein of more than one insured shall not operate to increase the limits of the company's liability."

■ The real question involved here is whether the provisions of this policy which excluded its application to situations involving injuries to an employee of "the insured" or injuries for which "the insured"

may be held liable under any workmen's compensation law, apply where there are more than one insured under the policy by reason of the definition of "insured" in the policy, and an employee of one of the insureds (omnibus) asserts a claim against another of insureds (omnibus).

The questions have been answered by our Supreme Court in Transport Insurance Co. v. Standard Oil Co. of Texas, 161 Tex. 93, 337 S.W.2d 284. The Court said:

"\*   \*   \* There is a split of authority in other jurisdictions, but the weight of authority is that if the injured party is the employee of any person who is insured under the policy, the employee exclusion is applicable although he may not have been an employee of the person committing the tort. \*   \*   \*" Citing authorities [1]

The appellants also contend that the "severability of interest" clause in American's policy which provides that the term "the insured" is used severally and not collectively, actually means that there are several insureds and that when the policy excludes an employee of "the insured", it really means the insured against whom the claim is made. The Supreme Court in Transport Insurance Co. v. Standard Oil Co. of Texas, supra, interpreting policy provisions and definitions identical to those contained here, rejected this same theory which is advanced by the appellants.

■ Finally, appellants argue that the Supreme Court does not hold in the Transport Insurance Co. case that the coverage would be excluded as to a claim brought against an additional (or omnibus) insured

1. For subsequent out of state authorities' to the annotation in 50 A.L.R.2d 78 at page 99, see later case service, Volume 5, page 106 (aa) "employee excluded" and later case service pocket part. For Federal cases discussing and citing Transport Insurance Co. v. Standard Oil Co. of Texas, see American Agric. Chem. Co. v. Tampa Armature Works, 315 F. 2d 856 (5th Cir. 1963); Hanover Ins. Co., Mass. Bond Dept. v. Travelers Indem. Co., 318 F.2d 306 (8th Cir. 1963); and see D.C.Op. 210 F.Supp. 765 at 766 and 767; Maryland Casualty Co. v. American Fidelity & Casualty Co., 217 F.Supp. 688 (D.C.1963); Walker v. Fireman's Fund Insurance Co., 268 F. Supp. 899 (D.C.1967); Hartford Accident & Indem. Co. v. Continental Casualty Co., 273 F.Supp. 851 (D.C.1966).

by any person who is an employee of another additional (or omnibus) insured, even though the majority of the court used "dicta" language to that effect which was not necessary or appropriate to the decision. Mr. Justice Hamilton of the Supreme Court in Valmont Plantations v. State, 163 Tex. 381, 355 S.W.2d 502 (1962) discusses the question of whether a Court of Civil Appeals was bound to follow the dicta of the Supreme Court and points out the rule that we feel obliged to follow:

" 'It is commonly held that a decision is authoritative only on questions which it was necessary to decide, and were involved, or in issue, in the case. However, inferior courts have been held bound by a decision on a question actually determined by an appellate court even though the decision thereof was not necessary to the determination of the case.' 21 C.J.S. Courts § 190, p. 382.

"See also, 21 C.J.S. Courts § 209, p. 316, as to statements made by way of dicta for the guidance of lower courts."

Appellants' point of error is overruled. The judgment of the trial court is affirmed.

ON MOTION FOR REHEARING

SHARPE, Justice (concurring).

In view of the argument made by appellants in their original brief and reiterated on their motion for rehearing, it seems appropriate to me to discuss further the context in which we must now consider the decision of our Supreme Court in Transport Insurance Company v. Standard Oil Company of Texas, 161 Tex. 93, 337 S.W.2d 284 (1960).

Shortly after it was handed down, the decision in Transport was criticized in a note authored by Bruce M. Harrington appearing in 39 Tex.L.Rev. 115. The final paragraph of that note reads as follows:

"Even without the severability clause, as the standard policy existed prior to 1955, the holding of the court in the instant case would be doubtful. Since an employer-employee relationship is the basis of the exclusion, it may be that the existence of that relationship, in itself, should be decisive in determining whether the exclusion is to apply. However, the question presented in the instant case is important not only because of the precise point itself, but because of its applicability to the broader subject of coverage in claims among the various insureds. The restricted effect allowed the severability clause could deny coverage in numerous situations where it was apparently intended to extend. It is to be hoped that in future cases the Texas Supreme Court will reconsider its holding, limit its application, and perhaps more clearly define what effect the severability clause is to have."

The majority opinion in Transport placed considerable weight on American Fidelity and Casualty Company v. St. Paul-Mercury Indemnity Co. (5 Cir. 1957), 248 F.2d 509, opinion by Judge R. Brown. However, almost three years after Transport Judge Brown authored a concurring opinion in American Agric. Chem. Co. v. Tampa Armature Works (5 Cir. 1963), 315 F.2d 856, which casts considerable light upon the meaning of St. Paul and its possible effect on Transport. In particular, Judge Brown expressly agreed with the dissenting opinion of Justice Walker in Transport. In footnote 9 of Judge Brown's concurring opinion the following appears:

"9. Oddly enough, in the illustration of a uniform, simple insurance clause which I have discussed, 'Who Is "The Insured" ', Risjord and Austin, 24 University of Kansas City L.Rev. 65 (1955), undertaking as it did to demonstrate that the new 'Severability of Interests' clause was really unnecessary to express the underwriters' intention as recognized by court decision may have become a part

of the problem. Some of its judicial statistics were questioned in American Fidelity & Casualty Co. v. St. Paul Mercury Indemnity Co., 5 Cir., 1957, 248 F.2d 509, 514, note 9. This may have led the Texas Supreme Court into its holding in Transport Insurance Co. v. Standard Oil Co. of Texas, 1959, 161 Tex. 93, 337 S.W.2d 284, at 289. This result occurred even though Justice Walker pointed out, correctly I believe, that the severability clause was present in the Texas case, but not in our prior American Fidelity-St. Paul case. In the tortuous course of this problem, it may be that in divining intention as Alabama sees it, we transmuted McDowell v. United States Fidelity & Guaranty Co., 1954, 260 Ala. 412, 71 So.2d 64, from a simple cross-employee exception case of dubious relevance into the legendary white horse case when the Alabama Supreme Court three years later decided Michigan Mutual Liability Co. v. Carroll, 1961, 271 Ala. 404, 123 So.2d 920. All of this is developed in 'Who Is "The Insured" Revisited' Risjord and Austin, XXVIII Ins. Counsel J. 100 (1961); Brown and Risjord 'Loading and Unloading; The Conflict Between Fortuitous Adversaries,' XXIX Ins. Counsel J. 197; see also XXVIII Ins. Counsel J. 576–584 (1961)."

The colloquy referred to in Brown and Risjord "Loading and Unloading; The Conflict Between Fortuitous Adversaries," XXIX Insurance Counsel J. 197 (1962), particularly throws additional light on the decisions in *Transport* and *St. Paul.*

I agree with appellants that the above-mentioned developments have clouded the holdings and effect of *Transport.* However, it appears to me that if its holdings are to be reconsidered or clarified such matters would be for the Supreme Court. If I were free to decide the questions here presented as a matter of first impression, I would agree with the views expressed by Justice Walker in his dissenting opinion in *Transport.* However, in my view, the holdings and language of the majority opinion in *Transport* are sufficient to require affirmance of the judgment of the trial court here and I feel compelled to concur in that action.