**COMMERCIAL STANDARD INSURANCE COMPANY et al., Petitioners,**

v.

**AMERICAN GENERAL INSURANCE COMPANY, Respondent.**

No. B–1760.

Supreme Court of Texas.

June 17, 1970.

Dyer, Redford, Burnett, Wray, Woolsey & Dunham, J. M. Burnett, Corpus Christi, for petitioners.

Branscomb, Gary, Thomasson & Hall, Richard A. Hall, Corpus Christi, for respondent.

McGEE, Justice.

Respondent American General Insurance Company brought this suit against petitioners Commercial Standard Insurance Company and Berry Contracting, Inc., and

its employees, Eugene J. Adams and J. W. Rosson, seeking a judgment declaring that its automobile liability policy (issued to Harris Concrete Co.) did not provide coverage to Berry and its employees against claims asserted against them by employees of the general contractor, Fuller Construction Company. Commercial filed a cross-action to recover all sums paid by it in settlement of the claims. The trial court severed the declaratory judgment suit from the cross-action and granted American's motion for summary judgment on an agreed statement of facts. This judgment was affirmed by the Court of Civil Appeals. 444 S.W.2d 347.

For all practical purposes, this is a controversy between the two insurance companies, involving the interpretation and applicability of standard provisions in American General Insurance Company's automobile liability policy, concerning the loading and unloading clause, the omnibus clause with reference to additional insureds, the employee exclusion clause, and the severability of interests clause.

For convenience we will abbreviate the names of the parties to: American, Commercial, Berry, Adams, Rosson, Harris, and Fuller.

The following facts are undisputed: Fuller, the general contractor, employed Harris to deliver concrete, "F. O. B. Jobsite." American had issued an automobile liability policy to Harris. Fuller secured the services of Berry, who furnished the crane and two operators, Adams and Rosson, for the purpose of transporting the concrete from the transit mix truck, over the sidewalk fence down to the basement and into the forms. In the operation, concrete was poured from the truck into a bucket which was suspended from the cables on the crane. The bucket attached to the cables on the crane was filled by an employee of Fuller, not by a Harris employee. It was then lifted into the air by Adams and Rosson, Berry employees, and instructions and signals as to where it would be deposited were given by another Fuller employee.

At this point, Cain, Castillo, and Saenz, who were Fuller employees, positioned and emptied the bucket into the forms. The accident happened after several of such deliveries, but before the Harris truck had been completely unloaded. While Cain, Castillo and Saenz were positioning the bucket for release of the concrete into the forms, the turnbuckles on the cable supporting the jib extension on the crane became unscrewed to a point where the threads became stripped, allowing the jib to fall, dropping the concrete bucket on Cain, Castillo and Saenz, injuring them.

Commercial's liability policy covered only the owner of the crane (Berry) under the doctrine of *respondeat superior*. This policy did not cover Berry's employees, Adams or Rosson. Fuller had at the time of the accident a policy of workmen's compensation insurance under which Cain, Castillo, and Saenz received various sums of money and benefits.

Thereafter, the three Fuller employees, and their compensation insurance carrier asserted claims for their damages against Berry, Adams and Rosson, and Castillo instituted suit against Berry. Demand was made by Berry, Adams and Rosson upon American to assume liability under the policy issued to Harris and to defend or settle these claims. American declined. Commercial effected settlement with all of these claimants. In this proceeding, by way of a cross action, Commercial sought recovery of the amounts of the various settlements together with attorneys' fees and expenses from American.

We must first determine whether Berry (crane owner) and Adams and Rosson (his employees and crane operators) were insureds under American's policy. They are insureds if they were in fact "using" the Harris cement truck at the time the accident occurred. It was stipulated that if the injuries arose during loading or unloading of the concrete truck within the terms

ot the loading and unloading provision of American's policy, then Fuller, the general contractor, was also an insured (omnibus) under American's policy.

American's policy, issued to Harris, contained these provisions:

"III Definition of Insured * * *. With respect to the insurance for bodily injury liability * * * the unqualified word 'insured' includes the named insured * * * and also includes *any person while using* the automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured * * * or with the permission of [the named insured]." (emphasis ours.)

With reference to the requirement that the person claiming coverage by "using" the automobile, the policy also provides in Paragraph IV(e):

"(3) Use of the automobile for the purposes stated includes the loading and *unloading* thereof." (emphasis ours.)

It was unanimously held in Travelers Insurance Co. v. Employers Casualty Co., 380 S.W.2d 610 (Tex.Sup.1965), under an almost identical fact situation, that the crane operator was covered by the liability policy on the truck because the cement trip in the bucket to such place of ultimate delivery (the forms) was merely an incident in the unloading operation. There, as here, the unloading of the truck had not been completed at the time of the accident. We rejected the minority view, the "*coming to rest*" doctrine, that loading begins when the transported object has been brought into the immediate vicinity of and is being physically carried or lifted into the vehicle, and unloading ends when the object reaches a place of rest and is no longer being carried or lifted off of the vehicle.

■ In that opinion (at 612), we adopted the majority view, the broader construction that "loading and unloading" embraces not only the immediate transference of the goods to or from the vehicle, but the "*complete operation*" of transporting the goods between the vehicle and the place from or to which they are being delivered. St. Paul Mercury Insurance Co. v. Huitt, 215 F. Supp. 709 (W.D.Mich.1963), affm'd in part 336 F.2d 37 (6th Cir. 1964); Lamberti v. Anaco Eqmt. Co., 16 A.D.2d 121, 226 N.Y. S.2d 70 (1962); Wagman v. American Fidelity & Casualty Co., 304 N.Y. 490, 109 N.E.2d 592 (1952); American Employers Ins. Co. v. Brock, 215 S.W.2d 370 (Tex. Civ.App.—Dallas 1948), writ ref'd n. r. e.); see also, U. S. Fidelity & Guaranty Co. v. Hartford Accident & Indemnity Co., 209 Va. 552, 165 S.E.2d 404 (Va.1969); Annot., 160 A.L.R. 1259 (1946); Annot., 95 A.L.R. 2d 1122 (1964); Risjord, Loading & Unloading, 13 Vand.L.Rev. 903 (1960).

■ American would distinguish the instant case from Travelers Insurance Co. v. Employers Casualty Co., supra, in that Fuller's purchase agreement in this case provided that Harris was to "furnish and deliver, f. o. b. jobsite," transit-mixed concrete. American argues that once the concrete had arrived at the jobsite, the unloading operation was complete because the owner of the concrete truck who furnished the concrete had nothing further to do with it. American contends that it is immaterial which doctrine ("coming to rest" or "completed operation") is applied; under the former, the cement came to rest when it was deposited in the bucket provided by the general contractor; under the latter, the delivery of the particular concrete was completed when it was delivered at the site by being placed in the bucket, and there was no causal connection between the unloading by the truck and the accident which resulted in personal injuries.

American's latter contention—no causal connection between the accident and the ownership, maintenance or use of the vehicle—has also been rejected by this Court in Travelers Insurance Co. v. Employers Casualty Co., 380 S.W.2d 610. In that case,

Employers, Borders and Capitol were in the position of American, Berry and Harris in this case. We said, at 614:

"The issue here is not who owned or controlled the concrete but whether Borders was unloading the truck, and thereby using it, while the bucket full of concrete was being moved from the truck to the contractor's forms. If Capitol had rented or borrowed the crane and bucket, and its employees were using the same to unload the truck, the automobile liability policy would clearly protect Capitol and its employees against liability arising out of the accident involved in this case. Under the terms of the policy, the same protection is afforded Borders who was an additional insured using (unloading) the truck with the consent of Capitol.

"Employers also relies on the rule that there must be a causal relation or connection between the accident or injury and the ownership, maintenance or use of the vehicle. This does not mean that the accident must be caused by negligent operation of the vehicle or some defect therein. When a vehicle is being unloaded it is being used to the same extent as if it were being driven, and the person doing the unloading is entitled to the same protection as the owner or operator. *In this instance the accident resulted from the collapse of the crane which was transporting concrete from the truck to the forms. Since the injuries arose out of the use (unloading) of the vehicle, it is our opinion that Borders was, as a matter of law, entitled to the protection afforded by the policy covering the truck.*" (emphasis ours.)

That the contract between Harris and Fuller provided for delivery F. O. B. jobsite does not alter the law applicable to this case. The pertinent inquiry is not whether the contract had been completed but whether the unloading operation under the terms of American's policy had been completed. It is clear, and the facts are undisputed, that only a part of the load had been dis-charged at the time of the accident; the "unloading" had not been completed. Stated another way: but for the unloading of this truck, the accident would not have occurred.

We hold that the injuries of the three employees of the general contractor arose out of the use (unloading) of the Harris cement truck by Berry's employees, and therefore Berry and his employees, Adams and Rosson, were omnibus insureds under American's automobile policy.

Prior to the addition of the loading and unloading endorsement to the automobile liability policy, neither the automobile policy nor the standard liability policy clearly defined which insurer had liability coverage for injuries sustained upon premises of one who was insured under a general liability policy during the loading and unloading of a vehicle not owned or hired by the general liability insured and an insured under a standard automobile liability policy. This question has been settled by the addition of the loading and unloading clause. The automobile liability insurer would provide coverage for injuries sustained as a result of negligence in the loading and unloading of the vehicle. Clause III defining the insured and Clause IV(e) (3) the loading and unloading clause (both quoted above) in American's automobile liability policy provide insurance coverage for omnibus or additional insureds "using" (loading or unloading) the vehicle with the permission of the named insured.

Despite the fact that the accident occurred during unloading operations (which was denied by American), making Berry, Adams, Rosson, and Fuller omnibus or additional insureds, American nevertheless contends that there is no coverage in this case wherein the employees of one additional insured assert claims for personal injuries caused by the negligence of another additional insured. It contends that the employee exclusion clause (d) (e), hereinafter quoted, would prevent coverage against claims of any and all employees of the

named insured or of any and all additional insureds. Commercial contends that the severability of interests clause plainly provides that each of the additional insureds were separate and distinct individuals covered by American's policy, apart from any and every other person who may be covered thereby and that they were insureds under the policy for the purpose of determining American's obligations with respect to the claims asserted. Further, Commercial contends that the employee exclusion clause is not applicable where no claims for damages are asserted by employees against their own employer and such employer does not find it necessary to claim, and does not claim, coverage for itself under the policy.

Additional provisions of the American policy insofar as they are relevant to the points of error asserted by Commercial in its application for writ of error are as follows:

"I. Coverage A—Bodily Injury Liability. To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person, caused by accident and arising out of the ownership, maintenance or use of the automobile."

"* * * EXCLUSIONS

"This policy does not apply:

"* * *

(d) under coverage A, to bodily injury to or sickness, disease or death of any employee of the insured arising out of and in the course of (1) domestic employment by the insured, if benefits therefor are in whole or in part either payable or required to be provided under any workmen's compensation law, or (2) other employment by the insured;

(e) under coverage A, to any obligation for which the insured or any carrier as his insurer may be held liable under any workmen's compensation, unemployment compensation or disability benefits law, or under any similar law; * * *."

"* * * CONDITIONS

"6. Severability of Interests—Coverages A and B. The term 'the insured' is used severally and not collectively, but the inclusion herein of more than one insured shall not operate to increase the limits of the company's liability."

In Transport Insurance Co. v. Standard Oil Co. of Texas, 161 Tex. 93, 337 S.W.2d 284 (Tex.Sup.1960), this Court, with three Justices dissenting, held that a standard automobile policy which specifically excluded any obligation for which the insured or any carrier as his insurer may be held liable under any workmen's compensation law, and which excluded coverage for bodily injury to any employee of insured arising out of and in the course of employment by insured, gave no coverage to the named insureds' employee's personal injury claim against an additional insured using the insured vehicle with the named insured's consent, notwithstanding the severability of interest clause, where the workmen's compensation carrier of the named insured had been held liable for workmen's compensation benefits.

We will review briefly the facts in the *Transport Ins. Co.* case, supra. Annis was employed as a driver of a tank truck for the Transport Company of Texas. Transport Insurance Company had issued a comprehensive general automobile policy covering the tank truck. Annis drove the tank truck to the premises of Standard Oil Company of Texas for the purpose of receiving a load of diesel fuel. While the tank truck was being loaded with fuel, there was an explosion, resulting in personal injuries to Annis. Annis filed suit against Standard for personal injuries alleged to have been sustained because of the negligence of Standard. Standard sought a declaration by the court that Transport Insurance

Company was obliged to defend the suit filed by Annis. The majority opinion in *Transport Insurance Company,* supra, made the following statement (page 290): "In the policy involved here there is no ambiguity in the exclusion clauses and no inconsistency is shown between the exclusionary clauses and the 'severability of interests' clause in the policy. The clear and unambiguous terms of the policy lead us to hold that *no* employee of the named insured *engaged in the named insured's business* can recover on the named insured's policy against anyone included as an additional insured." Accordingly, the majority opinion was limited to a situation where the named insured's employee is injured while engaged in the named insured's business and collects workmen's compensation, and then asserts his claim against the additional insured. The majority held that Transport Insurance Company had no duty to defend.

Our decision in Transport Insurance Co. v. Standard Oil Company of Texas, 161 Tex. 93, 337 S.W.2d 284 gives no effect to the severability of interests clause. In the course of our opinion we made this observation at p. 286:

"Transport alleged several grounds for summary judgment. However, the *only* ground pertinent to our decision is the one that its policy specifically excluded any obligation for which the insured or any carrier as its insurer may be held liable under any workmen's compensation law, and also excluded coverage for bodily injury to any employee of the insured arising out of and in the course of his employment by the insured." (emphasis ours.)

In the *Transport* case we concluded that the weight of authority was that if the injured party is the employee of *any* person who is insured under the policy, the employee exclusion is applicable although he may not have been an employee of the person committing the tort. The authorities relied upon as constituting the weight of authority at the time of this opinion (1960)

are: Travelers Ins. Co. v. Ohio Farmers Indemnity Co., 262 F.2d 132 (6th Cir. 1958); American Fidelity & Casualty Co. v. St. Paul-Mercury Ind. Co., 248 F.2d 509 (5th Cir. 1957), and cases cited therein; Lumber Mutual Casualty Ins. Co. of N. Y. v. Stukes, 164 F.2d 571 (5th Cir. 1947); Webb v. American Fire & Casualty Co., 148 Fla. 714, 5 So.2d 252 (1942); Continental Casualty Co. v. Pierce, 170 Miss. 67, 154 So. 279 (1934); Simpson v. American Automobile Ins. Co., 327 S.W.2d 519 (Mo. App.1959); Standard Surety & Casualty Co. of New York v. Maryland Casualty Co., 281 App.Div. 446, 119 N.Y.S.2d 795 (1953); Birrenkott v. McManamay, 65 S.D. 581, 276 N.W. 725 (1937); Associated Indemnity Corp. v. Wachsmith, 2 Wash.2d 679, 99 P.2d 420 (1940).

Our decision in Transport Insurance Co. v. Standard Oil Co. of Texas, supra, failed to give proper emphasis to the "severability of interests" clause. This fact, accompanied by many subsequent decisions specifically interpreting this clause, lead us to a different result. It was based on prior decisions involving policies that did not contain the severability of interests clause. The Fifth Circuit, which wrote the opinion in American Fidelity & Casualty Co. v. St. Paul-Mercury Indemnity Co., supra, upon which this Court relied, has on three subsequent occasions indicated that the presence of the severability of interests provision in the case would have led the court to reach a different result. American Agricultural Chemical Company v. Tampa Armature Works, 315 F.2d 856, 862 n. 8 (5th Cir. 1963); Stewart v. Liberty Mutual Insurance Co., 256 F.2d 444 (5th Cir. 1958). See also, Gowan, Provisions of Automobile & Liability Insurance Contracts, XXX Insurance Counsel Journal 100 (1965); Suter, Loading and Unloading, XXX Insurance Counsel Journal 112 (1964); Brown & Risjord, Loading and Unloading; The Conflict Between Fortuitous Adversaries, XXIX Insurance Journal 197, XVIII Ins. Counsel Journal 576 (1961); Risjord & Austin, XXVIII Ins. Counsel Journal 100 (1961);

Dimond, The New Standard Automobile Policy, XXIII Insurance Counsel Journal 67 (1956); Note, 39 Texas L.Rev. 115 (1960). *Transport* is overruled.

In Float-Away Door Co. v. Continental Casualty Co., 372 F.2d 701, 708 (5th Cir. 1967), cert. denied, 389 U.S. 823, 88 S.Ct. 58, 19 L.Ed.2d 76 (1967), Judge Rives writing, it is stated:

> "The better reasoned cases adopt a restrictive interpretation of the insured as referring only to the party seeking coverage under the policy. See decision in Maryland Casualty Co. v. American Fidelity & Cas. Co., E.D.Tenn.1963, 217 F. Supp. 688. *The primary objective of such exclusionary clauses is to avoid duplication of coverage with respect to compensation insurance. With that purpose in mind, there seems to be no reason why an insured should not be indemnified against the claim of an employee outside of that insured's employment."* (Emphasis ours.)

For cases holding that there was coverage and a duty to defend, see, Pepsi-Cola Bottling Co. of Charleston v. Indemnity Ins. Co. of North America, 318 F.2d 714 (4th Cir. 1963); Stewart v. Liberty Mutual Ins. Co., 256 F.2d 444 (5th Cir. 1958); Leonard v. Union Carbide Corp., 180 F.Supp. 549 (S.D.Indiana 1960); Walker v. Firemens Fund Ins. Co., 268 F.Supp. 899 (D.C.Montana 1967); General Aviation Supply Co. v. Insurance Co. of North America, 181 F. Supp. 380 (E.D.Missouri 1960); Canadian Indemnity Co. v. State Auto Insurance Association, 174 F.Supp. 71 (D.C.Oregon 1959); Travelers Ins. Co. v. American Fidelity & Casualty Co., 164 F.Supp. 393 (Minnesota, 3rd Div., 1958); Pleasant Valley Lima Bean Growers and Warehouse Ass'n v. Cal. Farm Ins. Co., 142 Cal.App.2d 126, 298 P.2d 109 (1956); Pullen v. Employers Lmbr. Ass'n Corp., 230 La. 867, 80 So.2d 373 (1956); Spurlock v. Boyce-Harvey Machinery Inc., 90 So.2d 417 (La. App.1956); Maryland Casualty Co. v. New Jersey Manufacturers Casualty Insurance Co., 28 N.J. 17, 145 A.2d 15 (1958); City of Albany v. Standard Accident & Insurance Co., 7 N.Y.2d 422, 198 N.Y.S.2d 303, 165 N.E.2d 869 (1960); Greaves v. Public Service Mutual Insurance Co., 5 N.Y.2d 120, 181 N.Y.S.2d 489, 155 N.E.2d 390 (1959); Employers Liability Assurance Corp. v. Liberty Mutual Insurance Co., 167 N.E.2d 142 (Ohio Com.Pl.1959); Travelers Ins. Co. v. Buckeye Union Casualty Co., 160 N.E.2d 874 (Ohio Com.Pl.1959); Cimarron Insurance Co. v. Travelers Insurance Co., 224 Or. 57, 355 P.2d 742 (1950).

Though the cases were in conflict prior to the addition of the severability of interests provision in 1955, there was substantial authority in support of the construction that the rights of each insured under the policy are to be determined as if there were no other person protected thereby. Kaifer v. Georgia Casualty Co., 67 F.2d 309 (9th Cir. 1933); Pullen v. Employers Liability Assurance Corp., 230 La. 867, 89 So.2d 373 (1956); Sandstrom v. Clausen's Estate, 258 Wis. 534, 46 N.W.2d 831 (1951); Shanahan v. Midland Coach Lines, 268 Wis. 233, 67 N.W.2d 297 (1954).

In the *Pullen* case, which policy did not contain a severability of interests clause, the court, in discussing the omnibus clause and the employee exclusion clause, said (89 So.2d p. 377):

> "Under the foregoing provisions, an insured, who may be liable for workmen's compensation or whose employee may suffer injury or death while engaged in his employment, is excluded from coverage. *The basis for exclusion is the existence of an employer-employee relationship between the injured and the insured,* and the insured must be identified as the employer to be subject to exclusion. In the absence of an employer-employee relationship between the insured and the injured, exclusion does not apply to the insured, and the latter remains under the protective coverage of the policy. There can hardly be any dispute as to whether Mitchell [an omnibus insured] is the

insured sought to be excluded from coverage by the exceptions, because he is the *only insured against whom liability is sought* and through whom, Employers, the exceptor is sought to be held. Insofar as the pleadings are concerned, there is no other insured involved in this proceeding. But even if any other insured or any number of insureds were involved directly or indirectly and whether or not their liability was sought, *the test of identification for exclusion must be applied to each specifically and not to all collectively,* as heretofore shown, and the exclusion or non-exclusion of any insured has no reference or relevance to that of any other insured where there is no connection or relationship between them." (emphasis ours.)

It would appear that the "Severability of Interests" clause was added to the standard automobile policy for the purpose of giving each person insured thereby the protection which was not afforded by the interpretation of earlier policies made by some courts. As stated in General Aviation Supply Co. v. Insurance Co. of North America, 181 F.Supp. 380 at 384 (E.D.Mo.1960), affirmed 8 Cir., 283 F.2d 590:

"The logical theory for the employee exclusion is to prevent employees of the tort feasor from suing his (sic) employer for injuries received thru his employer's negligence. A reason for this is that employees are usually covered by workmen's compensation and can recover from the employer, with or without negligence. When negligence is committed by other than his employer, the logic for the exclusion disappears. If the insurer wishes to further exclude its liability, it could clearly so state in its contract and its failure to do so should be strictly construed. Especially is this true when a policy contains a severability clause, for there can be implied that the insurer is actually recognizing a separate obligation to others, distinct and apart from the obligation it owes to the named insured * * *."

■ We must assume that the "Severability of Interests" provision was added to the standard policy for some purpose. This is a plain and unambiguous provision.

"6. Severability of Interests—Coverages A and B. The term 'the insured' is used severally and not collectively, but the inclusion herein of more than one insured shall not operate to increase the limit of the company's liability."

Although the unqualified words *"the insured"* are used, they can refer to the named insured and one or more additional insureds. The words do not always mean the named insured and one or more omnibus insureds; otherwise, we would be giving meaning to the word "collectively" and ignoring the word "severally." The word "severally" is defined in Black's Law Dictionary, 4th Ed. 1957, as:

"Distinctly, separately, apart from others * * *. When applied to a number of persons the expression *severally liable* usually implies that each one is liable alone."

When applied to insurance coverage, severally covered means to us that *each* individual insured has coverage.

■ Stated otherwise, the term "the insured" as used in this policy must be examined by first applying the "severability of interests" test. "The insured" does not refer to all insureds; rather, the term is used to refer to each insured as a separate and distinct individual apart from any and every other person who may be entitled to coverage thereunder. When a claim is made against one who is an "insured" under the policy, the latter is "the insured," for the purpose of determining the company's obligations with respect to such claim. The only limitation in this clause is to the effect that the "inclusion herein of more than one insured shall not operate to increase the limit of the company's liability."

Judgments of the trial court and the Court of Civil Appeals are reversed, and judgment is rendered declaring that liability insurance policy No. AC845524, issued by American General Insurance Company to Harris Concrete Company and in effect on September 24, 1962, did afford coverage thereunder to Berry Contracting, Inc., Eugene J. Adams and J. W. Rosson, with respect to the injuries sustained on September 24, 1962 by W. C. Cain, Jr., Moises Castillo and Lisandro Saenz, employees of George Fuller Company.