IN THE SUPREME COURT OF TEXAS








IN THE SUPREME COURT OF TEXAS
 
════════════
No. 08-0780
════════════
 
Chrysler Insurance Co., 
Petitioner,
 
v.
 
Greenspoint Dodge of Houston, Inc., 
Respondent
 
════════════════════════════════════════════════════
On Petition for Review from 
the
Court of Appeals for the First 
District of Texas
════════════════════════════════════════════════════
 
 
PER CURIAM
 
            
Justice Guzman did not 
participate in the decision.
 
            
This case arises out of an insurance coverage dispute, involving 
liability policies insuring a corporation and its officers, among others. The 
issue here concerns the corporation’s coverage for defamation. The policies 
excluded coverage for defamatory statements an insured knew to be false, and the 
insurance company refused coverage on the basis of this exclusion. The court of 
appeals concluded, however, that this known-falsity exclusion did not apply to 
the corporation because no corporate officer knew that the defamatory 
statements, made by other corporate employees, were false when made. The court 
accordingly affirmed, in part, a judgment awarding damages for the insurer’s 
failure to defend and indemnify its insured. 265 S.W.3d 
52.
            
A corporation’s knowledge, however, is not limited to what its officers’ 
know, but may include other employees’ knowledge, if those employees are 
corporate vice-principals. The employees who made the 
defamatory statements here, although not officers, were found to be corporate 
vice-principals. They were also found to have knowledge that their 
statements were false when made. The corporation thus knew, through its 
vice-principals, that the defamatory remarks were false when made and its 
knowledge, as a named insured, was sufficient to invoke the known-falsity 
exclusion. We accordingly disagree with the court of appeals’ application of the 
known-falsity exclusion and conclude that the policy did not provide liability 
coverage for the underlying defamation claim in this case.
            
The defamation claim arose from remarks and accusations directed at Noe Martinez, the inventory control manager at Greenspoint Dodge of Houston, Inc. Greenspoint’s general manager, comptroller, and used car 
sales manager defamed and disparaged Martinez, referring to him as a “thieving 
spic beaner” and a “thieving Mexican,” and accusing 
him of stealing cars and other criminal activity. Martinez was eventually fired 
and replaced by the general manager’s nephew.
            
Martinez thereafter sued Greenspoint, the three 
managers, and Greenspoint’s chief executive officer, 
Jack Apple, Jr., alleging defamation and intentional infliction of emotional 
distress. The dispute was submitted to binding arbitration, which resulted in an 
award of approximately $1.5 million in compensatory and punitive damages to 
Martinez. The arbitrators found that the individuals who engaged in the campaign 
to defame and injure Martinez were Greenspoint 
vice-principals.[1]
            
At the time of this occurrence, Greenspoint was 
a named insured under two liability policies, a Texas Commercial Multi-Peril 
Policy (Primary Policy) and a Commercial Umbrella Liability Policy (Umbrella 
Policy), both issued by Chrysler Insurance Co.[2] The Primary Policy contained several 
different coverages, including the Commercial General 
Liability Part (CGL Policy) and the Broadened Coverage-Garages Part (Broadened 
Garage Endorsement). Both the Primary Policy and the Umbrella Policy provided 
coverage for “personal injury” defined to include “[o]ral or written publication of material that slanders or 
libels a person or organization or disparages a person’s or organizations’s goods, products or services.” The Primary 
Policy’s liability limit for personal injury was $1 million and the Umbrella 
Policy’s limit was $5 million. Both policies contained an 
exclusion for personal injury “arising out of oral or written publication 
if done by or at the direction of the insured with knowledge of its 
falsity.”
            
After being notified of Martinez’s claims, Chrysler defended its insureds under a reservation of rights. Shortly after the 
arbitration award, however, Chrysler withdrew its defense and refused Greenspoint’s demands for indemnity.
            
The district court subsequently confirmed the arbitration award against 
Greenspoint and the other defendants, except for 
Apple. The court vacated the award against Apple, finding no evidence that he 
knew about the campaign to defame Martinez. Greenspoint appealed, but abandoned the appeal after 
settling Martinez’s claims for $1.75 million.
            
Greenspoint and Apple then sued Chrysler for 
breach of contract and bad faith. The trial court concluded in a summary 
judgment proceeding that Chrysler breached its duties under the policy by 
withdrawing its defense and not indemnifying Greenspoint for the settlement. The trial court submitted 
the remaining fact issues to a jury, which found Greenspoint’s settlement with Martinez was reasonable and it 
was entitled to attorneys’ fees and extra-contractual damages. The trial court 
rendered judgment for Greenspoint on the jury’s 
verdict, and Chrysler appealed. Apple recovered no damages in the judgment and 
sought no relief on appeal.
            
The court of appeals affirmed the trial court’s judgment, in part, and 
reversed it, in part. 265 S.W.3d 52. The court affirmed 
Greenspoint’s recovery under the Primary Policy, 
concluding that it obligated Chrysler to continue its defense and to indemnify 
Greenspoint, notwithstanding the known-falsity 
exclusions and the knowledge of Greenspoint’s 
vice-principals. Id. at 56, 68, 70. The court of 
appeals, however, reversed that part of the trial court’s judgment awarding 
damages in excess of the Primary Policy’s limits, rendering judgment that Greenspoint take nothing under the Umbrella Policy and its 
claims for extra-contractual liability under the Insurance Code. Id. at 
68-70. Both Chrysler and Greenspoint filed petitions 
for review with this Court.
            
Chrysler argues that the court of appeals erred in affirming Greenspoint’s recovery under the Primary Policy because the 
known-falsity exclusion expressly eliminated coverage for the defamation 
committed by Greenspoint’s vice-principals. While 
recognizing that Greenspoint was liable under tort law 
for the defamatory statements of its vice-pricipals, 
the court of appeals nevertheless reasoned that the issue here was not Greenspoint’s liability in tort but rather the meaning of 
the insurance contract, specifically whether “the acts committed by the 
vice-principals are the very acts of the ‘organization,’ as that term was used 
by the parties to the insurance policy.” Id. at 
65. The court then concluded that because the policies did not mention 
vice-principals but rather defined the organization (Greenspoint) to include only its officers, directors, or 
shareholders, that only their knowledge, not the vice-principals’, could be 
imputed to the corporation. Id. at 
66.
            
The court of appeals gleaned its definition of Greenspoint from the policy’s definition of who qualified as 
an insured. Id. at 65-66. The Primary Policy’s declarations page named 
“Greenspoint Dodge, Inc.” as an insured.3 The CGL Policy further identified 
additional entities who might claim the status of an insured because of their 
relationship to a named insured. The policy provided in pertinent 
part:
 
SECTION II - WHO IS AN INSURED
 
1. If you are designated in the Declarations 
as:
 
a. An individual . . . .
 
b. A partnership or joint venture . . . 
.
 
                                    
c. An organization other than a partnership or joint venture, you are an 
insured. Your “executive officers” and directors are insureds, but only with respect to their duties as your 
officers or directors. Your stockholders are also insureds, but only with respect to their liability as 
stockholders.
 
The Broadened Garage Endorsement also 
named “Greenspoint Dodge, Inc.” as an insured, 
similarly providing under its own “WHO IS AN INSURED” provision that Greenspoint’s executive officers, directors, and 
stockholders are also insureds while acting within the 
scope of their duties.
            
Relying on these provisions to define Greenspoint for purposes of the known-falsity exclusion, the 
court of appeals reasoned:
 
Under the terms of the policy, Greenspoint is Apple, the officers, the directors and the shareholders, and 
it does not include [vice-principals]. . . . Put 
simply, under tort law Greenspoint is responsible for 
the actions of certain people in supervisory positions because their actions are 
determined to be the actions of the corporation, and liability is imposed even 
though the supervisors are not officers, directors or shareholders of the 
corporation. But the policy excludes from coverage only a false statement by 
Greenspoint, as it is defined under the policy, as 
officers, directors or shareholders of the corporation. We conclude that the 
terms of the policy itself control the definition of which people make up the 
corporation, for purposes of the insurance coverage.
 
265 S.W.3d at 65-66 (emphasis added). 
The court thus concluded that under the policy “Greenspoint [was] Apple” and knew only as much as Apple, 
which is to say nothing about defaming Martinez. Id. at 
65.
            
The interpretation of an insurance contract is generally subject to the 
same rules of construction as other contracts. Nat’l Union 
Fire Ins. Co. of Pittsburg, PA v. Crocker, 246 S.W.3d 603, 606 (Tex. 
2008). Contract language that can be given a certain or definite meaning 
is not ambiguous and is construed as a matter of law. DeWitt County Elec. Coop., Inc. v. Parks, 1 S.W.3d 96, 100 
(Tex. 1999). The primary objective is to determine the parties’ intent as 
reflected in the policy’s terms, Don’s Bldg. Supply, Inc. v. OneBeacon Ins. Co., 267 S.W.3d 20, 23 (Tex. 2008), and 
our review of an unambiguous contract, like any other legal question, is de 
novo. Heritage Res., Inc. v. NationsBank, 939 S.W.2d 
118, 121 (Tex. 1996).
            
Contrary to the court of appeals’ view, nothing in the policy supports 
the conclusion that “Greenspoint is Apple” for 
purposes of this insurance. Greenspoint and Apple are 
separate legal entities, and the definition of “insured” does not alter this 
fact. Moreover, the insured definition does not purport to define Greenspoint, the named insured, but merely identifies other 
persons or entities who may qualify as additional insureds under the policy. Jack Apple is such a person 
because of his status as an officer, director, and shareholder of Greenspoint, but Apple’s qualification as an additional 
insured does not make him Greenspoint or vice versa. 
In fact, the policy provides that Greenspoint, Apple, 
and any other insured under the policy are to be considered separately for 
purposes of coverage.
            
The policy states that coverage applies “separately to each insured who 
is seeking coverage” or “separately to each insured against whom claim is made 
or ‘suit’ is brought.”4 The purpose of these separation-of-insureds clauses is to provide each insured with separate 
coverage, as if each were separately insured with a distinct policy. Commercial Std. Ins. Co. v. Am. Gen. Ins. Co., 455 S.W.2d 
714, 721 (Tex. 1970). Under such a provision, intent and knowledge for 
purposes of coverage are determined from the standpoint of the particular 
insured, uninfluenced by the knowledge of any additional insured. King v. Dallas Fire Ins. Co., 85 S.W.3d 185, 188-89 (Tex. 
2002).
            
The court of appeals’ view that Greenspoint’s 
knowledge is defined solely by that of another insured, Apple, creates a 
conflict with the separation-of-insureds clauses. When 
construing a contract, a court should consider the entire writing, giving effect 
to all its provisions so that none are rendered meaningless. Seagull Energy E&P, Inc. v. Eland Energy, Inc., 207 
S.W.3d 342, 345 (Tex. 2006). By conflating the insureds in derogation of the separation-of-insureds clause, the court deprives these clauses of meaning 
under the erroneous assumption that the policy’s definition of “insured” was 
also meant to define “Greenspoint.”
            
The arbitrators found that Greenpoint’s general 
manager, comptroller, and used car sales manager were Greenspoint’s vice-principals and that they intentionally 
and maliciously defamed Martinez “without even the pretense of a belief in the 
truth of their accusations.” “A vice-principal represents the corporation in its 
corporate capacity, and includes persons who have authority to employ, direct, 
and discharge servants of the master, and those to whom a master has confided 
the management of the whole or a department or division of his business.” GTE Sw., Inc. v. Bruce, 998 S.W.2d 
605, 618 (Tex. 1999). As vice-principals, their acts are the acts of the 
corporation itself, and corporate liability in this situation is direct rather 
than vicarious. Hammerly Oaks, Inc. v. 
Edwards, 958 S.W.2d 387, 391 (Tex. 1997).
            
Under the policy’s known-falsity exclusion, coverage for defamation was 
excluded for statements made or directed by the insured with knowledge of their 
falsity. The policy expressly named Greenspoint as an 
insured, and the arbitration proceeding effectively determined that Greenspoint made the defamatory remarks, through its 
vice-principals, and knew them to be false when made. Accordingly, there is no 
coverage under the Primary Policy for Greenspoint’s 
defamation, and the court of appeals erred in holding otherwise.
            
Greenspoint also filed a petition for review 
urging that the court of appeals erred in taking away its award of punitive and 
extra-contractual damages. “As a general rule there can be no claim for bad 
faith when an insurer has promptly denied a claim that is in fact not covered.” 
Republic Ins. Co. v. Stoker, 903 S.W.2d 338, 341 (Tex. 
1995). Having concluded that Chrysler did not breach the insurance 
contract, no basis supports these awards. Progressive 
County Mut. Ins. Co. 
v. Boyd, 177 S.W.3d 919, 922 (Tex. 2005) (per curiam). The court of appeals accordingly did not err 
in vacating them.
            
The court of appeals’ judgment is affirmed, in part, and reversed, in 
part, and, without hearing oral argument, Tex. R. App. P. 59.1, we render 
judgment that Greenspoint take nothing.
 
Opinion Delivered: October 30, 
2009







[1]
In Hammerly Oaks, Inc. v. Edwards, we defined a 
“vice-principal” as encompassing four classes of corporate agents:
 
(a) 
Corporate officers; (b) those who have authority to employ, direct, and 
discharge servants of the master; (c) those engaged in the performance of nondelegable or absolute duties of the master; and (d) those 
to whom a master has confided the management of the whole or a department or 
division of his business.
 
958 S.W.2d 
387, 391 (Tex. 1997) (quoting Fort Worth Elevators Co. v. Russell, 78 
S.W.2d 397, 406 (Tex. 1934) overruled on other grounds by Wright v. 
Gifford-Hill & Co., 725 S.W.2d 712, 714 (Tex. 1987)).

[2] 
Chrysler Insurance Co. was known as DaimlerChrysler Insurance Co. when 
these policies were issued.

[3] Two 
other entities, L & A Leasing and Apple Motor Cars of Houston, are also 
listed as named insureds.

[4] Both 
the CGL policy and the garage endorsement contained separation-of-insureds clauses. The CGL policy provides:
 
7. Separation 
of Insureds.
 
Except with 
respect to the limits of Insurance, and any rights or duties specifically 
assigned in this Coverage Part to the first Named Insured, this insurance 
applies:
 
a. As if 
each Named Insured were the only Named Insured; and
 
b. 
Separately to each insured against whom claim is made or “suit” is brought.
 
The garage 
endorsement similarly provides that “[e]xcept with 
respect to the Limit of Insurance, the coverage afforded applies separately to 
each insured who is seeking coverage or against whom a claim or suit is 
brought.”