**ALTIVIA CORPORATION, Appellant,**

v.

**GREENWICH INSURANCE COMPANY, Appellee.**

No. 14–03–00740–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Aug. 26, 2004.

Panel consists of Justices FOWLER, EDELMAN, and SEYMORE.

## MAJORITY OPINION

RICHARD H. EDELMAN, Justice.

In this liability insurance coverage dispute, Altivia Corporation ("Altivia") appeals a summary judgment entered in favor of Greenwich Insurance Company ("Greenwich") on the grounds that Greenwich had a duty to defend under Altivia's Commercial General Liability policy ("CGL") and its Employee Benefit Liability endorsement ("EBL") to the CGL. We affirm in part and reverse and remand in part.

### Background

Altivia was sued by a former employee, Hidrogo, who alleged that he was: (1) wrongfully terminated in retaliation for filing a workers' compensation claim; and (2) defamed by Altivia employees to other prospective employers. Altivia sued Greenwich for coverage under the CGL and EBL, Greenwich moved for summary judgment against those claims, and the trial court granted a take-nothing summary judgment against Altivia.

### Standard of Review

A traditional summary judgment may be granted if the motion and summary judgment evidence show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law on the issues expressly set out in the motion or response. TEX.R. CIV. P. 166a(c). We review a summary judgment de novo, taking all evidence favorable to the nonmovant as true and resolving every doubt, and indulging every reasonable inference, in the nonmovant's favor. *Provident Life and Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex.2003).

David R.N. Taubenfeld, Dallas, for appellant.

Thomas M. Farrell, Houston, for appellee.

A liability insurer is obligated to defend a suit if the facts alleged in the pleadings would give rise to any claim within the coverage of the policy. *Utica Nat'l Ins. Co. v. Am. Indem. Co.,* 141 S.W.3d 198, 201 (Tex.2004). An insurer's duty to defend is determined solely by the allegations in the pleadings and the language of the insurance policy. *King v. Dallas Fire Ins. Co.,* 85 S.W.3d 185, 187 (Tex.2002). The insurer bears the burden to show that a policy exclusion applies, and courts adopt the insured's construction of an exclusion whenever it is reasonable, even where the construction urged by the insurer appears to be more reasonable. *Utica,* 141 S.W.3d at 202, 207.

## CGL

Altivia's first issue contends that Greenwich had a duty to defend against Hidrogo's allegations of libel and slander under the CGL. The thrust of those allegations was that:

> [Altivia], by and through its authorized agents, has slandered and defamed [Hidrogo] to other trucking companies which has prevented him from obtaining other employment. [Altivia] published and caused to be published statements substantially to the effect that [Hidrogo] had two accidents while employed with [Altivia]. These words reflected upon the business and personal integrity of [Hidrogo].... These statements, expressly and by implication, constituted slander and slander *per se.* ... They adversely affected his reputation, both

personally and professionally.... These statements were false and malicious.

The relevant portions of the CGL policy: (1) generally provide coverage for sums the insured becomes legally obligated to pay as damages because of "personal injury," including oral or written publication of material that slanders or libels a person; but exclude coverage for: (2) such a personal injury if done by the insured with knowledge of its falsity; and (3) personal injury arising out of any termination of a person's employment or "employment related" acts or omissions, such as defamation (the "ERP exclusion").

Hidrogo's petition does not specify the context of the alleged statements or the persons by whom, time frame in which, or purpose for which the statements were allegedly made. To the extent they were alleged to be made in response to routine employment inquiries to Altivia by other prospective employers, they would be employment related acts subject to the ERP exclusion.[1] Conversely, to the extent the statements were otherwise alleged to be made by Altivia's authorized agents, such as to subject Altivia to liability, and were false and malicious, as Hidrogo's petition alleges, they would have allegedly been made by Altivia with knowledge of their falsity and thus also outside the scope of coverage. Therefore, based on the allegations in Hidrogo's pleadings and the language of the CGL, Altivia has not shown how Hidrogo's libel and slander allegations could give rise to any claim that would be within the coverage of the CGL.[2] Accordingly, its first issue is overruled.

---

**1.** *See Waffle House, Inc. v. Travelers Indem.,* 114 S.W.3d 601, 609 (Tex.App.-Fort Worth 2003, pet. denied) (distinguishing *Penn. Nat'l Mut. Cas. Ins. Co. v. Kitty Hawk Airways, Inc.,* 964 F.2d 478, 481 (5th Cir.1992) as having involved such an inquiry).

**2.** We thus conclude that Altivia's reliance on *Waffle House* to support its first issue is mis-

placed. The basis for the holding in that opinion was that the defamatory statements were made out of Waffle House's attempt to prevent its employees from leaving rather than being related to the plaintiff's termination. *See Waffle House,* 114 S.W.3d at 608–09. No such ulterior motive was alleged in this case. Moreover, even statements made

## EBL

■ Altivia's second issue argues that Greenwich's duty to defend against Hidrogo's claim of wrongful termination under the EBL was not limited to negligent acts, as Greenwich's motion for summary judgment had asserted. The relevant portions of the EBL provide:

1. Insuring Agreement
   a. [Greenwich] will pay those sums that the insured becomes legally obligated to pay as damages because of acts, errors or omissions arising out of the administration of [Altivia's] employee benefit program.
   
   * * * *
   
   c. This insurance applies to damages because of a negligent act, error or omission in the administration of [Altivia's] employee benefit program only if:. . . .

We agree with Altivia that subsection 1c does not limit the entire scope of the EBL coverage *to* negligent acts, but merely limits the extent of coverage *for* negligent acts thereunder. Because this was Greenwich's only basis for asserting that the EBL did not provide a duty to defend against the wrongful termination claim, we sustain Altivia's second issue.[3]

Accordingly, the judgment of the trial court is reversed and remanded with regard to Altivia's claim under the EBL for Hidrogo's wrongful termination claim and affirmed as to the remainder.

SEYMORE, J., concurring.

for the purpose of preventing employees from leaving are employment related acts. We further disagree with the apparent reasoning of that opinion that an ERP exclusion can apply only where the alleged misconduct arises out of the plaintiff's termination, rather than another employment-related act.

CHARLES W. SEYMORE, Justice, concurring.

The trial court concluded that Greenwich has no contractual duty to defend or indemnify Altivia. On appeal, Altivia does not challenge Greenwich's refusal to indemnify for losses sustained in connection with settlement of the underlying claim.[1]

The majority's ruminations about "context" of Hidrogo's pleadings are not consistent with proper application of the "eight corners" rule. In his petition, Hidrogo alleges the following:

> Defendant, by and through its agents, has slandered and defamed plaintiff *to other trucking companies* which has prevented him from obtaining other employment.
> (emphasis added)

In the underlying pleadings, there is no description of dates, times, places, or specific persons who made the alleged defamatory statements. Altivia suggests that we consider the possibility that some of Altivia's employees may have gossiped among themselves regarding Hidrogo's termination and driving record. The majority appropriately refuses to entertain Altivia's suggested scenario. However, the majority entertains its own scenario. After correctly concluding that there is no duty to defend if the statements were made in response to routine employment inquiries, the majority opines, "to the extent the statements were otherwise alleged to be made by Altivia's authorized agents, such as to subject Altivia to liability, and were false and malicious . . . they would have allegedly been made by Altivia with

3. We express no opinion on any other aspect of the applicability, if any, of the EBL to Hidrogo's claim.

1. Accordingly, I join the majority in limiting the court's analysis to the contractual duty to defend.

knowledge of their falsity and thus also outside the scope of coverage."

I concur with the majority in finding no duty to defend under the Comprehensive General Liability section of the policy but respectfully disagree with their analysis. My colleagues do not sufficiently distinguish between the duty to indemnify and the duty to defend. *See Utica Nat'l. Ins. Co. of Tex. v. Am. Indem. Co.,* 47 Tex. Sup.Ct. J. 845, 2004 WL 1535235, at *4 (Tex. July 9, 2004) (stating that having the duty to defend does not necessarily mean that a carrier is obligated to indemnify the insured). Unlike the duty to indemnify, whether there is a duty to defend does not depend upon the actual facts which might support liability in the underlying lawsuit. *Trinity Universal Ins. Co. v. Cowan,* 945 S.W.2d 819, 821–22 (Tex.1997). An insurer's duty to defend is determined by allegations in the pleadings and the language of the insurance policy, commonly expressed as the "eight corners" rule. *Nat'l Union Fire Ins. Co. of Pittsburg, PA v. Merchs. Fast Motor Lines, Inc.,* 939 S.W.2d 139, 141 (Tex.1997). We may not read facts into the pleadings, look outside the pleadings, or imagine factual scenarios that might trigger coverage; however, if the underlying petition contains allegations which, when fairly and reasonably construed, state a cause of action that is potentially covered by the policy, then the insurer has a duty to defend. *Nat'l Union Fire Ins. Co.,* 939 S.W.2d at 142.

The majority erroneously reads facts into the pleadings by speculating about knowledge, intent, motive or authority of Altivia's employees. On the contrary, we may not consider scenarios outside the plain language of Hidrogo's pleadings in the underlying case. Our focus should be only the text of factual allegations in the pleadings that show origin of the claimed damage. The focus on origin of damages is consistent with the requirement that there be a causal connection between con-

duct excluded from coverage and the damages alleged by the underlying plaintiff. *Waffle House, Inc. v. Travelers Indem. Co. of Ill.* 114 S.W.3d 601, 608 (Tex.App.-Fort Worth 2003, pet denied). Reading Hidrogo's petition literally, without reference to the truth or falsity of the allegation; the damages, if any, arise out of alleged defamatory remarks to prospective employers. Applying the "eight corners" rule, I would conclude that defamatory communications *to other trucking companies* without implying any other circumstance (for or against coverage) alleges an "employment related practice ... such as defamation" as described in the Employment Related Practices Exclusion. Such conduct as literally expressed in the underlying pleadings is excluded from coverage. Succinctly, the underlying petition does not state a cause of action that is potentially covered by the Comprehensive General Liability section of the policy. *Nat'l Union Fire Ins. Co.,* 939 S.W.2d at 142.

Accordingly, I concur with the majority relative to disposition of Altivia's first issue and join the majority in reversing and remanding on Altivia's second issue.