**DAIMLERCHRYSLER INSURANCE COMPANY, Appellant,**

v.

**Jack APPLE, Jr. and Greenspoint Dodge of Houston, Inc., Appellees.**

No. 01–05–01115–CV.

Court of Appeals of Texas, Houston (1st Dist.).

April 10, 2008.

Rehearing Overruled Aug. 8, 2008.

---

Lisa Ann Songy, Shannon, Gracey, Ratliff & Miller, LLP, Dallas, TX, Kevin F. Risley, Thompson, Coe, Cousins & Irons, L.L.P., Houston, TX, for Appellant.

Amanda Peterson, William A. Taylor, Andy Taylor & Associates, P.C., Houston, TX, for Appellees.

Panel consists of Justices TAFT, JENNINGS, and ALCALA.

## OPINION ON REHEARING

ELSA ALCALA, Justice.

We issued an opinion in this case on October 25, 2007. Appellant Daimler-Chrysler Insurance Company (Daimler), moved for a rehearing. After receiving a response from appellee, Greenspoint Dodge of Houston, Inc. (Greenspoint), we grant rehearing, withdraw our opinion and vacate our judgment of October 25, 2007, and issue this opinion in its stead.

In this insurance coverage dispute, Daimler appeals from a judgment for breach of contract that awarded Greenspoint $2,034,203.20 and attorney's fees.[1] The judgment is the result of the trial court's grant of partial summary judgment in favor of Greenspoint on the grounds that Daimler breached its duty to indemnify and to defend Greenspoint and a final judgment entered after a jury trial awarding Greenspoint damages resulting from that breach. The trial court also awarded an alternative judgment, applicable if the breach of contract judgment is reversed on appeal, in favor of Greenspoint for an unfair or deceptive act or practice. In its first through fourth issues, which pertain to the breach of contract judgment, Daimler contends that the trial court erred by rendering partial summary judgments that Daimler had a duty to indemnify Greenspoint under the insurance policies and that Daimler had a duty to indemnify Greenspoint for punitive damages. In its fifth through seventh issues, which pertain to the alternative judgment, Daimler contends that there is no evidence of extra-contractual damages and no evidence that Daimler engaged in a deceptive or fraudulent act.

---

**1.** Appellee Jack Apple Jr. was awarded no relief by the trial court and seeks none in this appeal.

We conclude the trial court properly granted summary judgment in favor of Greenspoint on Daimler's duty to indemnify Greenspoint under the terms of the broadened garage coverage contained in the commercial general liability policy. However, we reverse the judgment in favor of Greenspoint on Daimler's duty to indemnify Greenspoint under the terms of the umbrella policy because that policy excluded coverage for employment-related practices. We further conclude that there is no evidence that Greenspoint sustained extra-contractual damages. We reverse that portion of the trial court's judgment requiring Daimler to indemnify Greenspoint for the $500,000 attributable to punitive damages and affirm in all other respects.

## Background

Greenspoint had insurance policies with Daimler for the period from August 1, 1998 to August 1, 1999, that were extended to October 11, 1999. The primary policy contained a Commercial General Liability (CGL) coverage part and a garage coverage part that was modified by an endorsement entitled "Broadened Coverage–Garages" ("broadened garage" coverage or endorsement). The declarations of the CGL coverage state, under a section entitled "Limits of Insurance," that the "Personal and Advertising Injury Limit" is $1 million. Similarly, the broadened garage coverage declarations state, "Personal Injury and Advertising Injury Limit of Insurance $1,000,000." The second policy, which had a $5 million limit for personal injury coverage, was the Commercial Umbrella Liability (Umbrella) policy that was triggered (1) if the primary policy did not cover an occurrence, or (2) when, as here, an occurrence under the primary policy was in excess of $1 million. Both policies required Daimler to defend and indemnify Greenspoint for claims for "personal inju-

ry," defined in both policies to include oral publication of material that slanders or libels a person. However, the policies excluded coverage for publication of material done by or at the direction of the insured with knowledge of its falsity.

Greenspoint made a claim under the policies after Noe Martinez, Greenspoint's inventory control manager, brought suit against Greenspoint. Martinez claimed that James Sparks, Greenspoint's controller, Mort Hall, the general manager, and Jamie Mouton, the used car sales manager, made racist and defamatory remarks about Martinez to third parties and ultimately fired him. Although Martinez was told that his position was being eliminated, he later found out that Hall's nephew replaced him as the inventory control manager. Martinez filed suit in January 2000 against Greenspoint, Sparks, Hall, Mouton, and Jack Apple, Jr., Greenspoint's owner and chief executive officer. A court ordered Martinez's lawsuit to binding arbitration.

After a hearing, the arbitration panel issued an opinion and a final award. The arbitration panel ruled against Martinez on his claims for negligence, discrimination, and retaliation, and in favor of Martinez on his claims for defamation and intentional infliction of emotional distress. In its opinion, the panel found that "Martinez was defamed." The panel explained, "A statement is defamatory if the words tend to injure a person's reputation, exposing the person to public hatred, contempt, ridicule, or financial injury." The panel also found that the respondents orally published statements accusing Martinez of criminal activity, which is defamatory *per se*. The panel, "by way of example," found that the following defamatory statements were made:

- Mr. Satterfield and Mr. Holland both testified that Mr. Mouton told them

that Mr. Martinez was a "thieving spic beaner" or "thieving Mexican";

- Mr. Holland and Mr. Hinojosa both testified that Mr. Mouton told them that the FBI was investigating Mr. Martinez;
- Mr. Satterfield testified that Mr. Mouton told him that Mr. Martinez was involved in the "Mexican connection" and federal agents were after Mr. Martinez for a murder investigation;
- Mr. Satterfield and Mr. Hinojosa testified that Mr. Sparks told them that Mr. Martinez was involved in the theft of cars from Greenspoint Dodge;
- Mr. Hinojosa was told by Mr. Mouton not to get involved with Mr. Martinez and the "Mexican connection"; and
- Mr. Holland testified that heard [sic] Mr. Hall talked about getting "rid of that thieving Mexican" when the context clearly referred to Mr. Martinez.

The panel emphasized that there was other evidence of "defamation by the Respondents,"[2] and that the above "statements, and others, made by the Respondents were plainly defamatory." The panel also found that "Respondents acted with actual malice at the time they communicated the defamatory statements" and that the Respondents "actually *knew* their statements

to be false at the time of communication." (Emphasis in original).

■ Regarding Martinez's claim for intentional infliction of emotional distress, the panel noted that to prove intentional infliction of emotional distress, Martinez had to show:

(1) a person acted intentionally or recklessly; (2) the conduct was extreme and outrageous; (3) the person's actions caused another person's emotional distress; and (4) the emotional distress suffered by the other person was severe.

The panel found that "the Respondents intentionally slandered Mr. Martinez knowing, at the time, that their accusations of criminal conduct were untrue." The panel said, "This case is well 'outside the scope of an ordinary employment dispute and into the realm of extreme and outrageous conduct.'" The panel imposed joint and several liability on Greenspoint and the individual Respondents by considering the factors outlined by the supreme court in *GTE Southwest, Inc. v. Bruce*, 998 S.W.2d 605, 611–16 (Tex.1999).[3] In its opinion, the panel stated,

In particular, we considered (and rejected) the possibility that the individual Respondents acted out of personal ani-

---

2. "Respondents" in the arbitration panel's opinion were Greenspoint, Apple, Sparks, Hall, and Mouton.

3. In *GTE Southwest, Inc. v. Bruce*, the supreme court held that, in order to recover for intentional infliction of emotional distress, a plaintiff must show: (1) the defendant acted recklessly, (2) the conduct was extreme and outrageous, (3) the actions of the defendant caused the plaintiff emotional distress, and (4) the resulting emotional distress was severe. 998 S.W.2d 605, 611 (Tex.1999). The court noted that, when determining whether certain conduct is extreme and outrageous, the context and the relationship between the parties must be considered. *See id.* at 612, 614. "[W]hen repeated or ongoing severe harass-

ment is shown, the conduct should be evaluated as a whole in determining whether it is extreme and outrageous." *Id.* at 616. The range of behavior encompassed in "employment disputes" is broad, and includes, at a minimum, such things as criticism, lack of recognition, and low evaluations, which, although unpleasant and sometimes unfair, are ordinarily expected in the work environment. *Id.* at 613. "Thus, to establish a cause of action for intentional infliction of emotional distress in the workplace, an employee must prove the existence of some conduct that brings the dispute outside the scope of an ordinary employment dispute and into the realm of extreme and outrageous conduct." *Id.*

mosity. We also find that the individual Respondents were vice-principals of Greenspoint Dodge at the time of the events.

In a section entitled "Allocation of Liability," the arbitration panel specifically stated that a corporation is liable for its agents who engage in defamation if the agents are vice-principals, and then found Greenspoint, Apple, Sparks, Hall, and Mouton jointly and severally liable for the actual damages and assessed separate amounts for each of them for the punitive damages. The arbitration panel awarded Martinez $994,361 in total actual damages plus $1,150,000 in punitive damages.

Daimler provided, under a Reservation of Rights, a defense to Greenspoint during the arbitration proceedings. One of the issues on which Daimler reserved its rights was the issue of whether certain employees of Greenspoint had made defamatory statements about Martinez with knowledge of their falsity. On November 13, 2001, two days after the arbitration panel issued its final award, Daimler informed Greenspoint and Apple that it would no longer defend them and would not indemnify them for the award against them. Daimler interpreted the arbitration panel's findings as not requiring the defense or indemnification of Greenspoint due to the determination that the arbitration panel found that statements were made with knowledge of their falsity.

However, Daimler continued to provide a defense for Greenspoint and Apple until January 7, 2002, when the district court confirmed most of the arbitration panel's award.

The district court ordered judgment in favor of Martinez and against Greenspoint, Sparks, and Mouton, holding them jointly and severally liable for $994,361 in total actual damages, in accordance with the award by the panel of arbitrators.[4] Also in accordance with the arbitration panel's award, the court ordered punitive damages for $500,000 against Greenspoint, $50,000 against Sparks, and $50,000 against Mouton. The court, however, vacated all of the arbitration panel's awards that were assessed against Apple and Hall.[5]

After entry of the judgment, Daimler refused to continue to defend Greenspoint in any further proceedings. Without the assistance of Daimler, Greenspoint filed a multimillion dollar bond to stay the judgment, defended garnishment actions, and retained counsel to file an appeal.[6] While the appeal was pending, Greenspoint settled all of the claims against it for $1,750,000 and dismissed the appeal.

Believing that Daimler breached its duties under the two insurance policies, Greenspoint filed claims for breach of contract, unfair or deceptive practices or acts in violation of former article 21.21 of the Texas Insurance Code,[7] violations of the

---

**4.** The arbitration panel awarded Martinez $994,361 in total actual damages by finding $250,000 for general damages for injury to reputation, $216,022 for lost past earnings, $298,339 for lost future earnings, and $230,000 for mental anguish.

**5.** The arbitration panel had awarded $1,150,000 in punitive damages by assessing $500,000 against Apple, $500,000 against Greenspoint, and $50,000 each against Sparks, Hall, and Mouton.

**6.** *Martinez v. Greenspoint Dodge of Houston, Inc.*, No. 14–02–00349–CV, 2002 WL 31319442.

**7.** *See* Act of May 10, 2001, 77th Leg., R.S., ch. 290, § 1, 2001 Tex. Gen. Laws 548, 548–51, *repealed and recodified by* Act of May 22, 2003, 78th Leg., R.S., ch. 1674 §§ 2, 26, 2003 Tex. Gen. Laws 3611, 2659–61 (current versions at TEX. INS.CODE ANN. §§ 541.051, 541.056 (Vernon 2007)) (hereinafter "former article 21.21").

Deceptive Trade Practices–Consumer Protection Act ("DTPA"),[8] breach of the duty to settle, negligence, and conversion. Greenspoint attached to its petition copies of the primary policy and the Umbrella policy. Pertinent portions of these policies are in the attached appendix.

### Partial Summary Judgment for the CGL Coverage and Umbrella Policies

Daimler filed its motion for summary judgment, asserting that (1) Daimler has no duty to indemnify Greenspoint under the terms of the policies that specifically excluded coverage under these circumstances and (2) Daimler has no duty to indemnify Greenspoint for the punitive damages award because public policy prohibits indemnification of punitive damages.[9] Daimler contended that the exclusion regarding defamatory statements made by the insured with knowledge of their falsity applied to Martinez's claims. Daimler asserted that because the arbitration panel found that Sparks, Hall, and Mouton were vice-principals of Greenspoint and also found that Sparks, Hall, and Mouton made the defamatory remarks with knowledge of their falsity, the knowledge must be imputed to Greenspoint, triggering the exclusion. Daimler also asserted that the Umbrella policy contained "employment-related practices" exclusions that applied to the award for Martinez. Concerning the punitive damages, Daimler asserted that "punitive damages are no longer insurable as a matter of public policy."

Greenspoint also filed a motion for summary judgment, asserting that it was entitled to indemnity and defense under the CGL coverage and Umbrella policy. Greenspoint contended that Daimler owed a duty to indemnify it "unless Greenspoint itself made or directed the defamatory statements." Greenspoint contended that there are different legal tests for when a corporation may be held liable for the acts of its employees, which depend on whether tort law or contract law is used to interpret the terms of the insurance policy. Because the CGL coverage and Umbrella policy do not specify which test is to be used, Greenspoint asserted that the policies are ambiguous and the interpretation most favorable to the insured must be adopted. See Puckett v. U.S. Fire Ins. Co., 678 S.W.2d 936, 938 (Tex.1984).

In response to Daimler's contention that the Umbrella policy contained "employment-related practices" exclusions that applied to the award for Martinez, Greenspoint relied on the terms in the Umbrella policy stating that coverage is excluded for personal injury "arising out of your employment practices including wrongful dismissal or wrongful termination...." Greenspoint said "defamation" was not specifically listed as an employment related practice.

The district court considered the opposing motions for summary judgment and held as follows:

> With respect to Greenspoint, the court holds that Daimler Chrysler had a duty to defend Greenspoint and that a fact issue exists as to whether an appeal was reasonable. If the appeal was reasonable, then Daimler Chrysler owes the

---

8. Tex. Bus. & Com.Code Ann. §§ 17.41–.63 (Vernon 2002 & Supp.2007).

9. Daimler also moved for summary judgment on its duty to defend and Greenspoint's former article 21.21 and DTPA claims. However, Daimler does not raise an issue in this appeal concerning the duty to defend. Further, regarding the former article 21.21 and DTPA claims, Daimler does not complain about the denial of summary judgment on these grounds, but raises the trial court's alternative judgment on those claims in separate issues.

fees for appeal. The court also holds that Daimler Chrysler had a duty to indemnify Greenspoint and breached that duty by not paying the arbitration award/ [sic] and or the settlement. Fact issues exist as to the reasonableness of the settlement and of the attorneys fees.

### The Broadened Coverage—Garages Endorsement

After the trial court granted partial summary judgment on the CGL and Umbrella policies, Greenspoint amended its pleadings to specifically reference the broadened garage coverage endorsement, which provides,

#### BROADENED COVERAGE—GARAGES

This endorsement modifies insurance provided under the following:

GARAGE COVERAGE FORM

. . . .

Section I—Personal Injury and Advertising Injury Liability Coverage

A. COVERAGE

We will pay all sums the insured legally must pay as damages because of:

    a. Personal Injury caused by an offense committed:

      (1) In the conduct of your business; and

      (2) In the Coverage Territory during the Policy Period.

. . . .

1. WHO IS AN INSURED

The following are insureds:

    (a) You and your spouse.

    (b) Your partners, if you are a partnership. None of your partners is an insured for personal injury resulting from the conduct of any other partnership.

    (c) Your executive officers, directors and stockholders but only while acting within the scope of their duties.[10]

. . . .

B. EXCLUSIONS

This insurance does not apply to:

. . . .

    2. Personal injury or advertising injury arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

. . . .

D. ADDITIONAL DEFINITIONS

"Personal injury" means injury, other than bodily injury, arising out of one or more of the following offenses:

. . . .

    4. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organizations goods, products or services. . . .

### Partial Summary Judgment on Broadened Garage Coverage

Greenspoint filed a partial motion for summary judgment, asserting that Daimler breached its duty under the Broadened Coverage–Garage Form insurance policy by failing to defend and indemnify Greenspoint for the Martinez litigation. Greenspoint's partial motion for summary judgment closely followed the grounds asserted in the partial motion for summary judgment concerning the CGL coverage and Umbrella policy. Greenspoint asserted that because the policy defined "insured" as Greenspoint and its "executive officers, directors and stockholders," only an individual that fit into one of these classes of people could have their knowledge imputed

---

10. The broadened garage endorsement does not state that it applies to employees.

to Greenspoint to trigger the exclusion. Therefore, the acts of Greenspoint's employees Sparks, Hall and Mouton could not be imputed to Greenspoint.

Daimler responded to that motion for summary judgment by asserting that it had no duty to defend or indemnify Greenspoint for the Martinez litigation under the broadened garage coverage. Daimler expressly incorporated the grounds for summary judgment that it asserted in its motion concerning the CGL coverage and Umbrella policy. Daimler contended that the finding by the arbitration panel that Sparks, Hall, and Mouton were vice-principals of Greenspoint establishes that the knowledge of those individuals should be imputed to Greenspoint and, therefore, the exclusion concerning defamatory statements made with knowledge of their falsity applies.[11] Daimler also contended that public policy prohibits indemnifying Greenspoint for punitive damages.[12]

Concerning the broadened garage coverage, the trial court granted the partial summary judgment, holding that Daimler "had a duty to defend Greenspoint" and "had a duty to indemnify Greenspoint and breached that duty by not paying the arbitration award and or the settlement."

The trial court held a jury trial to settle the remaining issues in the case. The court instructed the jury that it had already determined that Daimler failed to comply with its contract with Apple and Greenspoint when it failed to pay the judgment in the arbitration lawsuit. In accor-

dance with the jury's verdict, the trial court, in its final judgment, ordered that Greenspoint "shall recover damages on its insurance coverage claim of $1,654,195[13] and prejudgment interest in the amount of $380,008.20" from Daimler. The trial court also included awards for post judgment interest, $340,000 in attorney's fees on its coverage claim, and attorney's fees for subsequent appeals.

The jury also determined that Daimler engaged in unfair or deceptive acts or practices that caused damage to Greenspoint. In its final judgment, the trial court provided an alternative judgment pertaining to the extra-contractual claim. The court ordered,

> In the alternative, if Plaintiffs' insurance coverage claim is reversed on appeal for any reason and only in that event, Plaintiff Greenspoint Dodge of Houston, Inc. shall recover damages on its Art. 21.21 (now Chapter 541 of the Texas Insurance Code) claim of $1,580,695. . . .

In the alternative judgment, the trial court also ordered prejudgment interest, post judgment interest, court costs, $385,000 in trial attorney's fees, plus appellate fees in specified contingent amounts.

### Daimler's Duty to Indemnify

**A. Duty to Indemnify under the Knowledge–of–Falsity Exclusion**

Within issues one and three, Daimler contends that the trial court erred by granting Greenspoint's motion for sum-

---

11. Daimler did not assert the employment-related practices exclusion. The Broadened Coverage—Garages endorsement did not contain an employment-related practices exclusion.

12. Daimler also responded to Greenspoint's grounds for summary judgment concerning the duty to defend. However, on appeal, Daimler limits its issues to the duty to indemnify.

13. This amount is apparently the sum of the $1,500,000 that the jury found for the damages for the settlement amount, the $27,695 costs for the supersedeas bond, and the $126,500 in damages from Daimler's withdrawal of its defense of the arbitration lawsuit.

mary judgment concerning Daimler's duty to indemnify Greenspoint and by denying Daimler's cross-motion for summary judgment concerning the duty to indemnify under the CGL coverage and the Umbrella policy because of the knowledge-of-falsity exclusion. In issue two, Daimler contends that the trial court erred by granting Greenspoint's partial motion for summary judgment on the duty to indemnify under the broadened garage coverage because it contained the same exclusion. Daimler states, "All three insuring agreements under which Greenspoint sought coverage for the arbitration award exclude coverage for claims resulting from acts of defamation when the statements were known to be false when made." Daimler says that the findings of the arbitration panel establish that the conduct of the individual Respondents is the conduct of Greenspoint.[14] Daimler contends that the policies exclude coverage for the damages awarded to Martinez because the policy specifically excludes from coverage any defamatory statements that were known to be false when made. The arbitration panel found that defamatory statements were known to be false when made by Sparks, Hall, and Mouton and that Sparks, Hall, and Mouton were "vice-principals" of the corporation. Daimler asserts that because the acts of "vice-principals" are the acts of the corporation, the insurance policy does not provide coverage as it excludes coverage for

statements made by the corporation that were known to be false when made.

Greenspoint responds that the description of who is the insured in the insurance policies should control. Greenspoint contends that the term "vice-principal ... does not ... fit with the language used throughout the policy (including terms such as employee, executive officer, director, etc.)." Explaining why the term "vice-principal" is not controlling here, Greenspoint states that the term is used commonly in tort law, but "the term has no necessary connection to the terms that are used in the policy when defining who is an insured." For instance, says Greenspoint, "a person might be a vice-principal but not be an executive officer or director." The motion for summary judgment states that "director" has a well-understood and specific meaning when used in the context of organizations and when itemized along with "officers" and "shareholders." Greenspoint contends that the arbitration panel's determination that Sparks, Hall, and Mouton were vice-principals of the corporation is insufficient to make any of them a director, executive officer, or stockholder of the corporation, which are the terms used by the insurance policy for people who are "the insured." Greenspoint states that tort liability is assessed to advance the policy objectives of compensating victims and deterring certain types of conduct, but, in contrast, contract interpretation is based on a very different poli-

---

**14.** This ground was not raised in Daimler's motion for summary judgment on the CGL and Umbrella policies. However, Daimler did raise it as a ground to oppose the summary judgment that Greenspoint sought on the broadened garage coverage. Daimler asserts that the arbitration panel found that "respondents including Greenspoint Dodge knew the statements were true." Greenspoint contends that this is an adjudicated fact that should be used to determine the duty to indemnify. *See GuideOne Elite Ins. Co. v.*

*Fielder Road Baptist Church,* 197 S.W.3d 305, 310 (Tex.2006). The facts found by the arbitration panel were that Sparks, Hall, and Mouton made the defamatory statements. Although the panel does refer to "Respondents" in several places, without specifying the individuals or Greenspoint, a reading of the opinion as a whole, with the statements identified by Daimler in their proper context, shows that the panel imposed liability on Greenspoint for the acts of Sparks, Hall, and Mouton.

cy objective of giving effect to the agreement of the parties to the contract.

## B. Summary Judgment Standard of Review

We review summary judgments de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex.2005). When both sides move for summary judgment and the trial court grants one motion and denies the other, we review the summary judgment evidence presented by both sides and determine all questions presented. *Comm'rs Court v. Agan*, 940 S.W.2d 77, 81 (Tex.1997); *Cigna Ins. Co. v. Rubalcada*, 960 S.W.2d 408, 411–12 (Tex.App.-Houston [1st Dist.] 1998, no pet.). We render such judgment as the trial court should have rendered. *Agan*, 940 S.W.2d at 81; *Rubalcada*, 960 S.W.2d at 412. When, as here, a summary judgment does not specify the grounds on which it was granted, we will affirm the judgment if any one of the theories advanced in the motion is meritorious. *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 157 (Tex.2004).

Summary judgment is proper only when a movant establishes that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Tex.R. Civ. P. 166a(c). A motion must state the specific grounds relied upon for summary judgment. *Id.* In reviewing a summary judgment, we must indulge every reasonable inference in favor of the nonmovant, take all evidence favorable to the nonmovant as true, and resolve any doubts in favor of the nonmovant. *Valence Operating Co.*, 164 S.W.3d at 661.

## C. Law Concerning Interpretation of Insurance Policies

■ The plain language of an insurance policy, like that of any other contract, must be given effect when the parties' intent may be discerned from that plain language. *See Utica Nat'l Ins. Co. of Tex. v. Am. Indem. Co.*, 141 S.W.3d 198, 202 (Tex.2004). If the policy language has only one reasonable interpretation, then it is not ambiguous, and we construe it as a matter of law. *Fiess v. State Farm Lloyds*, 202 S.W.3d 744, 746 (Tex.2006); *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157 (Tex.2003). If the contract is susceptible of two or more reasonable interpretations, then it is ambiguous and we must resolve the uncertainty by adopting a construction that favors the insured as long as that construction is not unreasonable. *Fiess*, 202 S.W.3d at 746 (citing *Nat'l Union Fire Ins. Co. v. Hudson Energy Co.*, 811 S.W.2d 552, 555 (Tex. 1991)). "When interpreting an insurance contract, we 'must adopt the construction of an exclusionary clause urged by the insured as long as that construction is not unreasonable, even if the construction urged by the insurer appears to be more reasonable or a more accurate reflection of the parties' intent.'" *Evanston Ins. Co. v. ATOFINA Petrochems., Inc.*, 51 Tex. Sup. Ct. J. 460, 2008 WL 400394, at *5 (Tex. Feb. 15, 2008) (quoting *Nat'l Union Fire Ins. Co.*, 811 S.W.2d at 555). " 'Exceptions or limitations on liability are strictly construed against the insurer and in favor of the insured,' and '[a]n intent to exclude coverage must be expressed in clear and unambiguous language.'" *Id.* (quoting *Nat'l Union Fire Ins. Co.*, 811 S.W.2d at 555).

## D. Law Pertaining to Duty to Indemnify

■ To determine whether there is a duty to indemnify an insured, courts must look to the facts actually established in the underlying suit.[15] *GuideOne Elite Ins. Co.*

---

15. In contrast, an insurer's duty to defend is    determined using the "eight-corners rule."

*v. Fielder Road Baptist Church,* 197 S.W.3d 305, 310 (Tex.2006). Here, the "facts actually established" were determined in the arbitration of Martinez's claims. The arbitration panel found that Sparks, Hall, and Mouton "actually *knew* their statements to be false at the time of communication." (Emphasis in original). Further, the panel specifically stated in its opinion that Sparks, Hall, and Mouton "were vice-principals of Greenspoint Dodge at the time of the events" underlying Martinez's claims. We must determine, therefore, how the characterization of Sparks, Hall, and Mouton as "vice-principals" of Greenspoint affects the determination of whether the policies cover Greenspoint for the Martinez litigation.

## E. Law Pertaining to Vice–Principals of Corporation

A person's "status as a vice-principal of the corporation is sufficient to impute liability to [the corporation]." *GTE Sw.,* 998 S.W.2d at 618. Corporations can act only through their agents. *Id.* A vice-principal "represents the corporation in its corporate capacity, and includes persons who have authority to employ, direct, and discharge servants of the master, and those to whom a master has confided the management of the whole or a department or division of his business." *Id.* The Supreme Court of Texas has explained,

> A 'vice-principal' encompasses four classes of corporate agents: (a) Corporate officers; (b) those who have authority to employ, direct, and discharge servants of the master; (c) those engaged in the performance of nondelegable or absolute duties of the master; and (d) those to whom a master has confided the management of the whole or a department or division of his business.

*Hammerly Oaks, Inc. v. Edwards,* 958 S.W.2d 387, 391 (Tex.1997). Courts use the "vice-principal" doctrine to "distinguish between the acts of 'the corporation itself' and 'that of a mere servant or employee.'" *Id.* (quoting *Fort Worth Elevators Co. v. Russell,* 123 Tex. 128, 70 S.W.2d 397, 406 (1934), *disapproved in part on other grounds by Wright v. Gifford–Hill & Co.,* 725 S.W.2d 712, 714 (Tex.1987)). Acts of a "mere servant or employee" are the basis for corporate liability based on the doctrine of respondeat superior. *Fort Worth Elevators Co.,* 70 S.W.2d at 406. "The liability of the master for the negligent acts of his vice principal is placed upon very different grounds, namely, that the negligent acts of the vice principal are the *very acts of the corporation itself.*" *Id.* (emphasis added); *see also GTE Sw., Inc.,* 998 S.W.2d at 618. In *GTE,* the court imposed liability on a corporation for a manager's intentional infliction of emotional distress on other employees when the jury found that the manager was a vice-principal of the corporation. *See GTE Sw., Inc.,* 998 S.W.2d at 618.

## F. Application of Term of Vice–Principal to the Insurance Policies

Here, the insurance policies exclude from coverage "publication of material, if done by or at the direction of the insured with knowledge of its falsity," as stated in the CGL policy and broadened garage endorsement, and defamatory statements "done at the direction of you with knowledge of its falsity," as stated in

*GuideOne,* 197 S.W.3d at 308. Under the eight-corners rule, the insurer's duty to defend is determined by the contents of the insurance policy and the factual allegations of the petition seeking recovery from the insured to see if those allegations potentially support a covered claim. *Id.* The duty to defend is generally broader than the duty to indemnify. *Id.* at 310.

the Umbrella policy. Therefore, under the exclusionary clause, if "the insured" made or directed the defamatory statements with knowledge of their falsity, the policies do not provide coverage.

The broadened garage coverage specifically defines "the insured" as Greenspoint, and its "executive officers," "directors," and "stockholders," "while acting within the scope of their duties." Sparks was Greenspoint's controller; Hall was its general manager; and Mouton was its used car sales manager. None of them were Greenspoint's executive officers, directors, or shareholders. Thus, whether the exclusion applies comes down to whether Greenspoint itself made the defamatory statements with knowledge of their falsity.

█ Under tort law, Greenspoint itself made the defamatory statements because the arbitration panel found that Sparks, Hall, and Mouton were vice-principals of Greenspoint [16] at the time of the events and the acts of vice-principals are the acts of the corporation itself. *See Fort Worth Elevators Co.*, 70 S.W.2d at 406 ("the negligent acts of the vice principal are the *very acts of the corporation itself*"). Greenspoint is therefore liable for the torts committed by its vice-principals. The issue here, however, is not whether Greenspoint is liable for the torts committed by its vice-principals. That issue was resolved by the arbitration panel. Rather, we must determine whether under the terms used by this insurance policy, the acts committed by the vice-principals are the very acts of the "organization," as that term was used by the parties to the insurance policy.

Nothing in the policy specifies that the knowledge of vice-principals will be considered the knowledge of Greenspoint for de-

termining whether the exclusion concerning defamatory statements made with knowledge of their falsity applies. The people described in the policy as "the insured" in addition to Greenspoint are the "executive officers, directors and stockholders but only while acting within the scope of their duties." These are more narrowly defined than the broader term vice-principal, which includes anyone with "authority to employ, direct, and discharge servants of the master, and those to whom a master has confided the management of the whole or a department or division of his business." *See GTE Sw.*, 998 S.W.2d at 618.

The broadened garage coverage policy describes who is insured as Greenspoint, Apple and his wife, in that it refers to "You and your spouse"; and Greenspoint's "executive officers, directors and stockholders." Greenspoint is the insured that seeks indemnification for the judgment against it. Thus, unless an exception excludes coverage, Greenspoint is entitled to indemnification for the judgment. Under the terms of the policy, Greenspoint is Apple, the officers, the directors and the shareholders, and it does not include those people also included in the definition of vice-principals, such as people who have authority to hire, fire and direct employees; people who perform nondelegable or absolute duties; or people in management positions over the entire corporation or a department or division of the corporation. Put simply, under tort law Greenspoint is responsible for the actions of certain people in supervisory positions because their actions are determined to be the actions of the corporation, and liability is imposed even though the supervisors are not offi-

---

**16.** Sparks, Hall, and Mouton were vice-principals of the corporation because they had "authority to employ, direct, and discharge servants of the master," and Greenspoint "confided the management of the whole or a department or division of his business" to Sparks, Hall, and Mouton. *See GTE Sw.*, 998 S.W.2d at 618.

cers, directors or shareholders of the corporation. But the policy excludes from coverage only a false statement by Greenspoint, as it is defined under the policy, as officers, directors or shareholders of the corporation. We conclude that the terms of the policy itself control the definition of which people make up the corporation, for purposes of the insurance coverage. *See Grimes Constr., Inc. v. Great Am. Lloyds Ins. Co.*, 51 Tex. Sup.Ct. J. 545, 248 S.W.3d 171, 172 (Tex.2008) ("[L]abels of tort or contract could not override the language of the insuring agreement") (citing *Lamar Homes, Inc. v. Mid–Continent Cas. Co.*, 242 S.W.3d 1, 13 (Tex.2007));[17] *Trinity Universal Ins. Co. v. Cowan*, 945 S.W.2d 819, 823 (Tex.1997) ("when terms are defined in an insurance policy, those definitions control").

Although tort law imputed liability onto Greenspoint due to the actions of the vice-principals under concepts for establishing liability by a corporation, the policy's reference to knowledge by the insured means that Greenspoint itself had to actually have the knowledge. No evidence shows that Greenspoint itself knew about the defamation, and nothing in the policy language requires that Greenspoint should be treated as having the knowledge of Sparks, Hall, or Mouton. We hold that the construction of the exclusionary clause offered by Greenspoint, the insured, is not unreasonable, that the insurance policy does not express in clear and unambiguous language an intent to apply the exclusionary clause to the conduct of vice-principals, as that term is used in tort law, and we must therefore strictly construe the limitation of liability against Daimler, the insurer, and in favor of Greenspoint. *See Evanston Ins. Co.*, 51 Tex. Sup.Ct. J. 460, 2008 WL 400394, at \*5.[18]

The trial court, therefore, did not err by implicitly rejecting Daimler's theory that Greenspoint itself made the statements and thus could not recover under any of the insurance policies.

## G. The *Altivia* Decision

Daimler cites to *Altivia Corporation v. Greenwich Insurance Co.* for the proposition that there is no duty to defend under the knowledge-of-falsity exclusion when the petition alleged that defamatory statements were made by corporation's agents and were false and malicious. *See* 161 S.W.3d 52, 54 (Tex.App.-Houston [14th Dist.] 2004, no pet.). In *Altivia*, the court held that an insurance company had no duty to defend a corporation when the corporation was sued for wrongful termination and defamation. *Id.* at 54–55.

---

**17.** In *Lamar Homes*, the supreme court stated, "Texas law, however, requires that insurance policies be written in English, preferably plain English, not code." *Lamar Homes, Inc. v. Mid–Continent Cas. Co.*, 242 S.W.3d 1, 13 (Tex.2007). The supreme court noted that the economic-loss rule should not be used as a "policy-construction tool" because it "leads to the conclusion that 'property damage' [in an insurance policy] does not mean what the policy plainly says, but rather is code for tort damages." *Id.*

**18.** We also note that in the Umbrella policy, which was agreed to concurrently with the garage policy, the parties described conduct by employees as separate from acts done by a partner, director, executive officer or stockholder. The Umbrella policy contains an "intentional act" exclusion that excludes

> Any dishonest, malicious, fraudulent, criminal or intentional act or omission; however this exclusion does not apply to **you** if such act or omission was committed by **your** employee (other than a partner, director, executive officer or stockholder) without **your** direction or **your** knowledge.

The terms, as used in the Umbrella policy, suggest that the parties did not intend the insuring agreements to apply the tort concept of vice-principals to make the acts of certain employees the acts of Greenspoint itself.

Specifically, Altivia was sued by a former employee for responses to inquiries by other employers regarding the discharged employee, wherein Altivia falsely reported that the discharged employee, a trucker, had been involved in two accidents while employed by Altivia. *Id.* at 54. Altivia's insurance policy excluded coverage for "such a personal injury if done by the insured with knowledge of its falsity" and a "personal injury arising out of any termination of a person's employment or 'employment related' acts or omissions, such as defamation (the 'ERP exclusion')." *Id.* The court, applying the "eight-corners rule," stated,

> Hidrogo's petition does not specify the context of the alleged statements or the persons by whom, time frame in which, or purpose for which the statements were allegedly made. To the extent they were alleged to be made in response to routine employment inquiries to Altivia by other prospective employers, they would be employment related acts subject to the ERP exclusion. Conversely, to the extent the statements were otherwise alleged to be made by Altivia's authorized agents, such as to subject Altivia to liability, and were false and malicious, as Hidrogo's petition alleges, they would have allegedly been made by Altivia with knowledge of their falsity and thus also outside the scope of coverage.

*Id.* at 54. The portion of the opinion analogous to the situation before us refers to "statements ... alleged to be made by Altivia's authorized agents, such as to subject Altivia to liability." *See id.* The court does not indicate whether the insur-

ance policy in *Altivia* defines who is an "authorized agent" for the purpose of insurance, nor does it speculate who is an "authorized agent." Since the very question before us is what constitutes an act of Greenspoint *as defined by the insurance policy, Altivia* is not instructive.

**H. Duty to Indemnify under the Employment–Related Practices Exclusion**

Within its first and third issues, Daimler also contends that the trial court erred by granting Greenspoint's motion for partial summary judgment on the duty to indemnify because the policies contain an employment-related practices exclusion.

**1. The Broadened Garage Coverage and CGL Coverage**

Concerning Daimler's challenge to the broadened garage coverage, the record supports Greenspoint's response that the broadened garage endorsement does not contain the employment-related practices exclusion. We hold that the trial court did not err by implicitly rejecting Daimler's assertion that the employment-related practices exclusion precluded coverage under the broadened garage coverage of the primary policy.

■ An appellate challenge on the grounds of the employment-related practices exclusion is made by Daimler to the CGL coverage.[19] This challenge, however, was *not a ground in Daimler's motion for* summary judgment or in response to Greenspoint's motion for summary judgment before the trial court ruled on those

---

19. Daimler points to the primary policy that has an endorsement that is entitled "TEXAS CHANGES—EMPLOYMENT RELATED PRACTICES EXCLUSION." That endorsement excludes coverage under the CGL coverage for personal injury to any person arising out of any "[e]mployment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person."

motions.[20] When the trial court ruled in favor of Greenspoint in the motion for summary judgment in June 2003 by holding that Daimler breached its duty to indemnify Greenspoint under the CGL coverage and Umbrella policy, Greenspoint did not assert that an employment-related practices exclusion was a reason to hold that there was no insurance coverage for Greenspoint under the CGL coverage. The first time that Daimler claimed that there was no insurance coverage on the ground that the employment-related practices exclusion of the CGL coverage was in its "Supplemental Briefing and Motions for Clarification and Reconsideration in support of its Motion for Summary Judgment against Plaintiffs Greenspoint Dodge and Jack Apple, Jr.," which was filed *after* the trial court granted partial summary judgment for Greenspoint and denied Daimler's motion. We cannot conclude that the trial court erred by rendering summary judgment in favor of Greenspoint when Daimler did not expressly present in its summary judgment response the grounds that it now asserts on appeal. *See* TEX.R. CIV. P. 166a(c) ("Issues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal."); *Rayl v. Borger Econ. Dev. Corp.*, 963 S.W.2d 109, 114 (Tex.App.-Amarillo 1998, no pet.) (holding that party may not appeal summary judgment in favor of opponent when grounds opposing summary judgment asserted on appeal were not raised before trial court).

We conclude the broadened garage coverage is not limited by any employment-related practices exclusion and that the CGL coverage was not challenged on those grounds. Further, as discussed above, the knowledge-of-falsity exclusion does not apply to Greenspoint under the facts of this case. We hold that the trial court properly rendered summary judgment in favor of Greenspoint under the broadened garage coverage of the primary policy, which had a policy limit of $1 million dollars. However, because the judgment exceeds $1 million dollars, we must next determine whether the $5 million dollar Umbrella policy provided further coverage for Greenspoint.

## 2. The Umbrella Policy

On appeal, Daimler challenges the Umbrella Policy on the grounds that it excluded coverage for employment practices. The Umbrella policy excludes coverage for "personal injury" or "advertising injury":

(5) To any officer, director or employee of yours arising out of or in the course of that person's employment by you;

(6) To any current or former officer, director or employee of yours or any applicant for employment by you arising out of your employment practices including wrongful dismissal or wrongful termination by any officer, director or employee.

"Personal injury" is defined by the Umbrella policy as "injury, other than 'bodily injury', arising out of ... [o]ral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services." The term "arising out of" is very broad, requiring only a "but for" causal connection, not direct or proximate causation requirement. *Utica Nat'l*

---

**20.** Daimler only raised the employment-related practices exclusion found in the Umbrella policy as a ground for summary judgment in its favor. Daimler's only "response" to Greenspoint's motion was an objection to an affidavit filed in support of Greenspoint's motion.

*Ins. Co. of Tex.,* 141 S.W.3d at 203. Here, it is undisputed that but for his employment at Greenspoint, Martinez would not have been subjected to the conduct of his superiors, Sparks, Hall, and Mouton, who were motivated to fire Martinez to be able to hire Hall's nephew. We hold that the employment-related practices exclusion to the Umbrella policy excludes personal injury to Martinez that arises out of or in the course of Martinez's employment by Greenspoint. Thus, Greenspoint could not recover under the $5 million dollar Umbrella policy, and was limited to the $1 million dollar broadened garage coverage of the primary policy.

We overrule Daimler's issues one, two, and three concerning the breach of its duty to indemnify Greenspoint, in part, and sustain regarding Daimler's duty to indemnify under the Umbrella policy. Because we have determined that the portion of the award attributable to punitive damages is not covered by any of the policies, we need not address Daimler's fourth issue, in which it asserts that, as a matter of law, an insurance company may not indemnify an insured for an award of exemplary damages.

### Extra–Contractual Claims

In its fifth issue, Daimler contends that the trial court erred by denying its motion for directed verdict because there is no evidence that Greenspoint suffered extra-contractual damages. In its sixth issue, Daimler contends that "there is no evidence to support the jury's findings that Greenspoint suffered any extra contractual damages."

The trial court rendered judgment in favor of Greenspoint on its extra-contractual claims. Specifically, the trial court ordered that

In the alternative, if Plaintiffs' insurance coverage claim is reversed on appeal for any reason and only in that event, Plaintiff Greenspoint Dodge of Houston, Inc. shall recover damages on its Art. 21.21 (now Chapter 541 of the Texas Insurance Code) claim of $1,580,695....

Having reversed in part the judgment for Greenspoint on the coverage claims, we now address Daimler's issues concerning the extra-contractual claims.

■ Directed verdicts are subject to the same standards of review as a legal sufficiency, or no-evidence, challenge. *City of Keller v. Wilson,* 168 S.W.3d 802, 823 (Tex.2005). "The final test for legal sufficiency must always be whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." *Id.* at 827. "[L]egal-sufficiency review in the proper light must credit favorable evidence if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could not." *Id.* If the evidence "would enable reasonable and fair-minded people to differ in their conclusions, then jurors must be allowed to do so." *Id.* at 822. "A reviewing court cannot substitute its judgment for that of the trier-of-fact, so long as the evidence falls within this zone of reasonable disagreement." *Id.* Although the reviewing court must "consider evidence in the light most favorable to the verdict, and indulge every reasonable inference that would support it[,] ... if the evidence allows of only one inference, neither jurors nor the reviewing court may disregard it." *Id.*

■ Damages in an extra-contractual claim must be different than simply claiming the benefits of the policy, because these damages are recoverable in a breach of contract claim. *See Provident Am. Ins. Co. v. Castaneda,* 988 S.W.2d 189, 198–99 (Tex.1998) (holding that insurer's allegedly deceptive acts or practices "did not cause

any injury independent of the denial of policy benefits"); *United Servs. Auto. Ass'n v. Gordon*, 103 S.W.3d 436, 442 (Tex. App.-San Antonio 2002, no pet.) ("An insured is not entitled to recover extra-contractual damages unless the complained of actions or omissions cause injury independent of the injury resulting from a wrongful denial of policy benefits.").

In its brief, Greenspoint responds to Daimler's fifth and sixth issues by explaining its theory of Daimler's liability as follows: "A reasonably prudent insurance carrier in DaimlerChrysler's position would have recognized its liability to pay damages on behalf of the Greenspoint Dodge and Apple *in an amount within the policy limits*." (Emphasis added). Greenspoint's also states, "[Daimler's] refusal to settle this claim compelled Apple to retain the services of counsel and to institute this suit *to recover amounts due under the Primary Policy and the Umbrella Policy by failing to offer to pay Greenspoint Dodge the policy benefits to which it is entitled*." (Emphasis added.) At trial, Greenspoint, during closing argument, told the jury that the answer for damages on the extra-contractual claims and the breach of contract "is going to be the same." The amount of damages Greenspoint asked the jury to assess for the extra-contractual claims was the amount awarded to Martinez after a judgment was signed in favor of Martinez. Indemnification for Martinez's claim is the portion of the contract that Greenspoint claims Daimler breached. Greenspoint did not seek damages independent of the policy benefits sought under its breach of contract claim and it sought only to obtain the benefits of the policy it had with Daimler. Having upheld the breach of contract claim in the amount of the policy limits, we hold that Greenspoint may not recover extra-contractual damages beyond the policy limits because the damages claimed by Greenspoint were only those damages due to Greenspoint under the insurance policies it had with Daimler. *See Provident Am. Ins. Co.*, 988 S.W.2d at 198–99; *United Servs. Auto. Ass'n*, 103 S.W.3d at 442.

We sustain Daimler's fifth and sixth issues.[21]

### Conclusion

We reverse that portion of the trial court's judgment awarding damages to Greenspoint and that portion awarding Greenspoint a recovery on its extra-contractual claims. We remand the cause to the trial court for the limited purpose of reducing the damages awarded to Greenspoint by $500,000, which is over the coverage limits of the applicable policy, and to recalculate the amount of pre-judgment interest. This is a limited remand. *See Hudson v. Wakefield*, 711 S.W.2d 628, 630 (Tex.1986); *Hong Kong Dev., Inc. v. Nguyen*, 229 S.W.3d 415, 439 (Tex.App.-Houston [1st Dist.] 2007, no pet.). We affirm the judgment of the trial court in all other respects.

### APPENDIX

Attached to the petition was the Commercial General Liability (CGL) insurance policy, which states:

SECTION 1—COVERAGES

. . . .

COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY

21. Because of our disposition of Daimler's fifth and sixth issues, we need not reach Daimler's seventh issue in which Daimler asserts that "[t]here is no evidence to support the jury's finding that [Daimler] engaged in a deceptive or fraudulent act by failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of the Martinez claim prior to the arbitration trial."

1. **Insuring Agreement.**

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal injury" or "advertising injury" to which this insurance applies. We will have the right and duty to defend any "suit" seeking those damages. We may at our discretion investigate any "occurrence" or offense and settle any claim or "suit" that may result. . . .

   b. This insurance applies to:

   (1) "Personal injury" caused by an offense arising out of your business, excluding advertising, publishing, broadcasting, or telecasting done by you or for you;

   . . . .

2. **Exclusions.**

   This insurance does not apply to:

   a. "Personal injury" or "advertising injury":

   (1) Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity;

   . . . .

**SECTION II—WHO IS AN INSURED**

1. If you are designated in the Declarations as:

   a. An individual, you and your spouse are insured, but only with respect to the conduct of a business of which you are the sole owner.

   b. A partnership or joint venture, you are an insured. . . .

   c. An organization other than a partnership or joint venture, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insured, but only with respect to their liability as stockholders.

2. Each of the following is also an insured:

   a. Your "employees" other than your "executive officers," but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, no "employee" is an insured for:

   (1) "Bodily injury" or "personal injury":

   (a) To you, to your partners or members (if you are a partnership or joint venture), or to a co-"employee" while in the course of his or her employment duties related to the conduct of your business;

   (b) To the spouse, child, parent, brother or sister of that co-"employee" as a consequence of paragraph (1)(a) above;

   (c) Arising out of his or her providing or failing to provide professional health care services.

   . . . .

**SECTION IV—COMMERCIAL GENERAL LIABILITY CONDITIONS**

. . . .

7. Separation of Insureds.

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

   a. As if each Named Insured were the only Named Insured; and

   b. Separately to each insured against whom claim is made or "suit" is brought.

. . . .

## SECTION V—DEFINITIONS

1. "Advertising injury" means injury arising out of one or more of the following offenses

   (a.) Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

   . . . .

6. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

   . . . .

13. "Personal injury" means injury, other than "bodily injury," arising out of one or more of the following offenses:

   . . . .

   d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products, or services[.]

The CGL policy has an endorsement that is entitled "TEXAS CHANGES—EMPLOYMENT RELATED PRACTICES EXCLUSION." That endorsement states,

This Insurance does not apply to:

"Personal injury" to:

   (1) A person arising out of any:

   (a) Refusal to employ that person;

   (b) Termination of that person's employment; or

   (c) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humili-

ation or discrimination directed at that person. . . .

Also attached to the petition was the Commercial Umbrella Liability Policy that stated,

. . . .

### Coverage B—Umbrella Liability

If no "underlying insurance" applies, we will pay to the Insured the "ultimate net loss" in excess of the "retained limit" because of:

. . . .

"Personal injury" or "advertising injury" which occurs within the "coverage territory" and during the "period of coverage" to which this insurance applies. No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for elsewhere in this policy.

. . . .

### SECTION II—EXCLUSIONS

This insurance does not apply to:

. . . .

h. Any dishonest, malicious, fraudulent, criminal or intentional act or omission; however, this exclusion does not apply to **you** if such act or omission was committed by **your** employee (other than a partner, director, executive officer or stockholder) without **your** direction or knowledge. [Emphasis in policy].

. . . .

u. "Personal injury" or "advertising injury":

   (1) Arising out of oral or written publication of material, if done at the direction of you with knowledge of its falsity;

   . . . .

   (5) To any officer, director or employee of yours arising out of or in the

course of that person's employment by you;

(6) To any current or former officer, director or employee of yours or any applicant for employment by you arising out of your employment practices including wrongful dismissal or wrongful termination by any officer, director or employee.

## SECTION III—WHO IS AN INSURED

■ If you are designated in the Declarations as:

(a.) An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

(b.) A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

(c.) An organization other than a partnership or joint venture, you are an' insured. Your executive officers and directors are insureds, but only with respect to their duties as your officers and directors ....

. . . .

■ Each of the following is also an insured:

(a.) Your employees, other than your executive officers, but only for acts within the scope of their employment by you. However, none of these employees is insured for:

(1) "Bodily injury" or "personal injury" to you or to a co-employee while in the course of his or her employment;

. . . .

## SECTION VI—DEFINITIONS

. . . .

15. "Personal injury" means injury, other than "bodily injury", arising out of one or more of the following "offenses",

. . . .

d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; ....